UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JABARI MANN,

                                        Plaintiff,
                                                                9:19-CV-478
v.                                                              (LEK/TWD)

M. MARTINGANO,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

JABARI MANN
Plaintiff, *pro se*
218 East 115 Street
Apartment 1A
New York, New York 10029

HON. LETITIA JAMES                              ERIK PINSONNAULT, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for Defendant
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

    Jabari Mann ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, regarding

the alleged violation of his constitutional rights.  (Dkt. No. 1.)  According to Plaintiff, M.

Martingano ("Defendant") slammed his head against a wall on December 5, 2018.  *Id.*  Based on

this event, Plaintiff raises an Eighth Amendment claim against Defendant for use of excessive

force and state law assault and battery claims.  *Id.*   Defendant now moves for summary

judgment, *in lieu* of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure because, among other reasons, Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 14.)  Plaintiff responded in opposition to the motion and Defendant replied.  (Dkt. Nos. 20, 21.)

For the reasons explained below, the Court recommends granting Defendant's motion for summary judgment.

## I.    BACKGROUND

On December 5, 2018, Plaintiff alleges Defendant moved him from the I-1 dorm to the "I.D. room" at Green Correctional Facility.  (Dkt. No. 1 at 4.[1])  According to Plaintiff, Defendant then "slammed [his] face into the wall which caused [his] tooth to chip in half and busted [his] lip."  *Id.*  Plaintiff claims Defendant issued a false misbehavior report the next day to "cover up" Defendant's assault.  *Id.*  Given these facts, Plaintiff asserted an excessive force claim against Defendant, along with state law assault and battery claims and a request for injunctive relief.  *Id.* at 5-6.

Defendant has moved for summary judgment on three grounds.  (Dkt. No. 14-1.)  First, Defendant argues Plaintiff failed to exhaust his administrative remedies because he failed to appeal his grievance.  *Id.* at 4-9.  Second, Defendant argues Plaintiff's state law claims are barred by New York Correction Law § 24.  *Id.* at 10-11.  Finally, Defendant argues Plaintiff's claim for injunctive relief is moot because Plaintiff was transferred to a different facility.[2]  *Id.* at 11-12.

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2]  Defendant subsequently argued that Plaintiff abandoned his state law claim and claim for injunctive relief as Plaintiff failed to address either of Defendant's arguments on the two claims in Plaintiff's opposition papers.  (Dkt. No. 21 at 7.)

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment may be granted only if the submissions of the parties taken together

"shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of

showing, through the production of admissible evidence, that no genuine issue of material fact

exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is

"genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467 F.3d

at 273 (citations omitted).  The nonmoving party must do more than "rest upon the mere

allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical

doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 & n.11 (1986).  "Conclusory allegations, conjecture and speculation . . . are insufficient

to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

"To defeat summary judgment, . . . nonmoving parties may not rely on conclusory

allegations or unsubstantiated speculation."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d

Cir. 2005) (citation and internal quotation marks omitted).  "[T]o satisfy Rule 56(e), affidavits

must be based upon 'concrete particulars,' not conclusory allegations."  *Schwapp v. Town of*

*Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted).  "Statements that are devoid of any

specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93-CV-5981 (WHP) (JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B.    Exhaustion of Administrative Remedies

#### 1.    *Legal Standards*

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

In New York State prisons, DOCCS has a well-established three-step inmate grievance program ("IGP"). N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5 (2013). First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id*. § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii).

Third, a grievant may appeal to the Central Office Review Committee ("CORC") within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

Grievances involving claims of excessive force are subject to an expedited procedure. *Id*. § 701.8. The superintendent must initiate an in-house investigation by higher ranking

supervisory personnel, request an investigation by the inspector general's office, or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. *Id*. § 701.8(d). The superintendent must render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g).

"An inmate transferred to another facility may continue an appeal of any grievance." *Id.* § 701.6(h)(2). Any response to a grievance pending at the time of an inmate's transfer must be mailed directly to that inmate at his new facility or location. *Id.* § 701.6(h)(1). To appeal, the inmate must mail a signed appeal form to the IGP at the facility where the grievance was filed within seven calendar days of receipt. *Id.* § 701.6(h)(2).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is a "next step" in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he

PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotations marks and citations omitted)).

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements.  *See Jones*, 549 U.S. at 216.  Whether a plaintiff has exhausted his administrative remedies is a question of law.  *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).  Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment *in lieu* of an answer.  *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment made in lieu of an answer where inmate failed to exhaust administrative remedies)).

### 2. *Application*

Here, the record evidence demonstrates Plaintiff filed a grievance involving an excessive force incident on December 11, 2018.[3]  (Dkt. No. 14-4 at 6; Dkt. No. 20 at 15.)  On February 16, 2019, the superintendent denied Plaintiff's grievance.  (Dkt. No. 14-4 at 6.)  It is undisputed that Plaintiff did not appeal the superintendent's decision to CORC.  (Dkt. No. 14-2 at 6-7.)  Plaintiff filed the present action on April 24, 2019.  (Dkt. No. 1.)

To the extent Plaintiff claims he "exhausted his administrative remedies when he filed a grievance with [the IGP]" (Dkt. No. 20 at 8), the act of filing a grievance without appealing to CORC does not constitute proper exhaustion of administrative remedies.  *See* 7 N.Y.C.R.R.

---

[3]  Plaintiff also filed a second grievance about the incident on December 16, 2018, which was consolidated with the first grievance by the IGP.  (Dkt. No. 14-4 at 3.)

§ 701.5; *Grubbs v. Serrell*, No. 9:13-CV-0467, 2018 WL 1175232, at *2 (N.D.N.Y. Mar. 6, 2018) (holding plaintiff failed to exhaust his administrative remedies by failing to appeal the superintendent's denial of his grievance to CORC).  Therefore, the Court finds Defendant has satisfied his burden of demonstrating Plaintiff failed to exhaust his administrative remedies prior to commencing this action.

However, the Court's inquiry does not end here, as the PLRA "contains its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  More specifically, Section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id*. at 1859.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

In *Williams v. Correction Officer Priatno*, the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  829 F.3d 118, 123 n.2 (2d Cir. 2016).  The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.  *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Thus, the burden now shifts to Plaintiff to establish unavailability under *Ross*.  There is no evidence in the record showing that the IGP "operate[d] as a simple dead end" to Plaintiff or that prison administrators prevented Plaintiff from using the IGP due to "machination, misrepresentation, or intimidation."  *See Ross*, 136 S. Ct. at 1859-60.  The only *Ross* factor that could potentially be raised is unavailability due to an "opaque" administrative scheme.  *See id.* However, while being deferential to Plaintiff's *pro se* status, Plaintiff has failed to raise an issue of fact as to the IGP program's opacity.

In response to Defendant's motion, Plaintiff argues he "should not be penalized for not appealing the Superintendent's decision to [CORC] within seven (7) calendar days after receipt of the decision pursuant to [§] 701.5(d)(1)(i) because he was transferred to Upstate SHU[4] and never received the Superintendent's decision."  (Dkt. No. 20 at 9.)  This statement is unsupported by any factual evidence in the record and, alone, is insufficient to establish an issue of material fact to defeat a summary judgment motion.  Fed. R. Civ. P. 56(c)(1).  Had this statement constituted admissible evidence, Plaintiff's argument would still fail to establish the IGP was unavailable to him.

As stated above, inmates must appeal to CORC if they do not receive a timely response from the facility superintendent.  *See Eleby*, 2017 WL 986123, at *5 (holding administrative

---

[4]  "Upstate SHU" refers to the Special Housing Unit at Upstate Correctional Facility.

remedies were available to plaintiff because he could have appealed to the superintendent or CORC after failing to receive a response to his grievance). Further, as an inmate may continue the appeal of any grievance after being transferred to a different facility, 7 N.Y.C.R.R. § 701.6(h)(2), the transfer of an inmate while a grievance is pending is insufficient to establish unavailability on its own. *See White v. Ercole*, No. 06-CV-11361 (DAB), 2009 WL 602890, at *5 (S.D.N.Y. Mar. 3, 2009); *see also Amaker v. Bradt*, 745 F. App'x 412, 413 (2d Cir. 2018) (finding plaintiff's transfer to another prison one month after filing a grievance failed to establish administrative remedies were unavailable); *Richardson v. New York State Dep't. of Corr. & Cmty Supervision Employees*, 633 F. App'x 816, 818 (2d Cir. 2016).

Here, the evidence establishes Plaintiff could have appealed the superintendent's delayed response before he was transferred. IGP records indicate Plaintiff's grievance was filed on December 11, 2018. (Dkt. No. 14-4 at 6.) The superintendent had twenty-five calendar days to investigate and render a decision on the grievance, or until January 5, 2019. *See* 7 N.Y.C.R.R. § 701.8(f). The record indicates Plaintiff was transferred to Upstate Correctional Facility on or about January 11, 2019. (Dkt. No. 14-2 at 3; Dkt. No. 14-3 at ¶ 13.[5]) Thus, because Plaintiff was able to appeal the superintendent's lack of response prior to being transferred, his argument that he failed to appeal to CORC due to his transfer is without merit. *Cf. Toliver v. Adner*, No. 9:18-CV-1420 (DNH/ATB), 2019 WL 35035059, at *4 (N.D.N.Y. June 3, 2019) (holding the plaintiff failed to establish the grievance process was unavailable to him because of his transfer where plaintiff was transferred *after* the deadline to file his grievance had already passed).

---

[5] Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

Based upon the foregoing, the Court finds Plaintiff did not exhaust his administrative remedies as the PLRA requires.[6]

### 3.    *Dismissal with Prejudice*

The Court may dismiss a claim without prejudice for failing to exhaust administrative remedies "[i]f the time permitted for pursuing administrative remedies has not expired."  *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (quoting *Snider*, 199 F.3d at 111-12).  Alternatively, the Court may dismiss the claim with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust.  *Id.* at 88.

Here, a year has passed from the time Plaintiff should have appealed to CORC.  As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's action with prejudice.  *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

### C.    **Plaintiff's State Law Claims**

Because the Court has recommended dismissing Plaintiff's lone federal claim, the Court lacks original jurisdiction to consider Plaintiff's state law claims.  However, pursuant to 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

---

[6] Defendant also argues Plaintiff failed to exhaust his administrative remedies because he did not name Defendant as his assailant in his grievances.  (Dkt. No. 14-1 at 8-10.)  However, inmates are not required to name specific officers in grievances.  *See* 7 N.Y.C.R.R. § 701.5(a)(2).  Inmates must only "allege facts sufficient to alert corrections officials 'to the nature of the claim,' and 'provide enough information about the conduct' at issue 'to allow prison officials to take appropriate measures.'"  *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).  Here, in his grievances, Plaintiff claimed that an unknown officer slammed his head into the wall and Defendant issued a false misbehavior report to cover up the assault.  (Dkt. No. 14-4 at 2-3.)  The Court finds Plaintiff's grievances put prison officials on notice of the alleged assault and provided sufficient information for an investigation of the incident.

claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).  Nevertheless, the district court may decline to exercise supplemental jurisdiction over such a claim if "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3); *see also Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (holding that "the district court did not abuse its discretion in declining to exercise jurisdiction over the state-law claims" where it had dismissed the other federal law claims related to the action).

Here, the Court recommends declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Alternatively, the Court agrees with Defendant that Plaintiff's state law claims must be dismissed pursuant to New York Corrections Law § 24.  To that end, § 24 provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment and requires such actions be brought in the New York Court of Claims as a claim against the state.  N.Y. Correct. Law § 24; *see also Ierardi v. Sisco*, 119 F.3d 183, 186-87 (2d Cir. 1997).  If a plaintiff brings such an action in federal court, the court should dismiss his or her state law claims for lack of subject matter jurisdiction.  *Baker v. Coughlin*, 77 F.3d 12, 15-16 (2d Cir. 1996); *Joy v. New York*, No. 5:09 Civ. 841, 2010 WL 3909694, at *4-5 (N.D.N.Y. Sept. 30, 2010) (collecting cases).

Here, Plaintiff's state law claims against Defendant arise from acts or omissions within the scope of his employment at DOCCS.  Thus, the Court recommends dismissing Plaintiff's common law claims for lack of subject matter jurisdiction.  *See Ames v. New York Dep't of Corr. & Cmty. Supervision*, No. 9:12-CV-01487 (MAD/RFT), 2015 WL 4126326, at *14 (Mar. 24, 2015) (dismissing plaintiff's state law assault and battery claims as barred by New York

Corrections Law § 24 where officers allegedly used excessive force on plaintiff within the facility).

### D.   Plaintiff's Claim for Injunctive Relief

While this motion was pending in the District Court, Plaintiff was released from custody. (Dkt. No. 19.)  The Court finds that, as Plaintiff is no longer incarcerated at any correctional facility, his claim for injunctive relief is now moot.  *See Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009); *Matthews v. Thomas*, No. 9:16-CV-1198 (TJM/CFH), 2017 WL 6629229, at *7 (N.D.N.Y. Nov. 6, 2017) ("Because plaintiff's complaint requested only injunctive relief in the form of a transfer, when plaintiff was released from prison 'he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered moot.'") (internal citations omitted).

## III.   CONCLUSION

For the above stated reasons, the Court finds Plaintiff's excessive force claim was not exhausted as the PLRA requires and recommends Defendant's motion for summary judgment (Dkt. No. 14) be granted.  The Court also recommends Plaintiff's Eighth Amendment excessive force claim be dismissed with prejudice and Plaintiff's state law claims be dismissed without prejudice.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 14) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's Eight Amendment excessive force claim be dismissed with prejudice; and it is further

**RECOMMENDED** that Plaintiff's state law claims be dismissed without prejudice; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 30, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New
York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York, New
York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1**  The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary judgment
and dismissing the amended complaint, and United States
Magistrate Judge James C. Francis IV having issued a report
and recommendation, dated August 20, 1999, recommending
that the motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this Court,
dated August 28, 1999, stating that plaintiff does "not contest
the dismissal of this action", it is

ORDERED that the attached report and recommendation of
United States Magistrate Judge James C. Francis IV, dated
August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary
judgment is granted, and the amended complaint is dismissed;
and it is further

ORDERED that the Clerk of the Court shall enter judgment
accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42 U.S.C.
§ 1983. Mr. Cole alleges that the defendant Richard Pflueger,
a corrections officer, violated his First Amendment rights
by refusing to allow him to attend religious services. The
defendant now moves for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the defendant's
motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate
in the custody the New York State Department of
Correctional Services ("DOCS"), incarcerated at the Green
Haven Correctional Facility. (First Amended Complaint
("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the
plaintiff was in keeplock because of an altercation with prison
guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with one hour
for recreation. (Affidavit of Anthony Annucci dated Dec. 1,
1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3).
Permission is granted unless prison officials determine that
the inmate's presence at the service would create a threat to
the safety of employees or other inmates. (Schneider Aff. ¶
3). The standard procedure at Green Haven is for the captain's
office to review all requests by inmates in keeplock to attend
religious services. (Schneider Aff. ¶ 3). Written approval is
provided to the inmate if authorization is granted. (Affidavit
of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.")
¶ 5). The inmate must then present the appropriate form to
the gate officer before being released to attend the services.
(Pflueger Aff. ¶ 5).

 **\*2**  On June 28, 1993, the plaintiff submitted a request
to attend the Muslim services on July 2, 1993. (Request
to Attend Scheduled Religious Services by Keep–Locked
Inmate dated June 28, 1993 ("Request to Attend Services"),

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3

(S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*'s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

### B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being

released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

### *Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

### All Citations

Not Reported in F.Supp.2d, 1999 WL 983876

### Footnotes

1      In light of this finding, there is no need to consider the defendant's qualified immunity argument.

---

**End of Document**            © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 19 of 87

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing Correctional
Facility, 354 Hunter Street, Ossining, NY 10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant Attorney
General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

 **\*1** This is a civil rights action brought by *pro se* plaintiff
Terrell Eleby against three individuals employed by the
New York State Department of Corrections and Community
Supervision ("DOCCS"), one of whom has since been
dismissed from the action, pursuant to 42 U.S.C. § 1983.
In his complaint, plaintiff alleges that two of the defendants
assaulted him in violation of his Eighth Amendment rights,
and the third defendant violated his Fourteenth Amendment
rights by issuing an allegedly false misbehavior report against
him and confining him in the special housing unit ("SHU") at
the prison facility in which he was housed.

Currently pending before the court is a motion brought by
the remaining two defendants seeking the entry of summary
judgment in their favor based upon plaintiff's alleged failure
to exhaust available administrative remedies before filing
suit. For the reasons set forth below, I recommend that the
defendants' motion be granted.

I. BACKGROUND [1]

Plaintiff is a prison inmate currently held in the custody of the
DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although plaintiff is
now confined elsewhere, at the times relevant to this action he
was housed in the Auburn Correctional Facility ("Auburn")
located in Auburn, New York. *Id.* at 18.

In his complaint, plaintiff alleges that on January 14, 2015, he
was waiting in one of Auburn's hospital dormitory rooms to be
escorted to an outside facility for a medical examination. Dkt.
No. 1 at 4; Dkt. No. 29-2 at 54. At approximately 10:00AM,
defendants Smith and Vevone, both of whom are corrections
officers, arrived at plaintiff's room to escort him on the
medical trip. Dkt. No. 1 at 4. While plaintiff was attempting
to remove his clothes for a mandatory strip search, defendant
Smith "violently and physically attacked [him]." *Id.*; *see also*
Dkt. No. 29-2 at 58. According to plaintiff, both defendants
Smith and Vevone "jumped on [his] back," and defendant
Smith punched him repeatedly in the eye, head, neck, back,
and ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant in the
action, arrived at plaintiff's dorm, physically intervened, and
ordered defendants Smith and Vevone to cease the assault and
leave the room. Dkt. No. 1 at 4-5; Dkt. No. 29-2 at 58-59,
64. As a result of the alleged assault, plaintiff suffered various
injuries, including a bloody and swollen eye, swelling and
redness to his neck, and sore ribs. Dkt. No. 1 at 5; Dkt. No.
29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing him
of violating six prison rules. Dkt. No. 22 at 9; Dkt. No.
29-2 at 72. Following a superintendent's hearing to address
the charges, plaintiff was found guilty on four of the six
counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at 72. As a result
of that finding, plaintiff was sentenced to serve thirty days of
disciplinary SHU confinement, with a corresponding loss of
commissary, package, and telephone privileges. Dkt. No. 22
at 13; Dkt. No. 29-2 at 73-72.

II. PROCEDURAL HISTORY

 **\*2** Plaintiff commenced this action on or about March 12,
2015, with the filing of a complaint and accompanied by an
application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1,
2. On May 12, 2015, Senior District Judge Thomas J. McAvoy
issued a decision and order granting plaintiff's IFP application
and accepting his complaint for filing, with the exception
of one cause of action. [2] Dkt. No. 11. In his third cause
of action, plaintiff asserted a Fourteenth Amendment claim

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 20 of 87

against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). See Fed. R. Civ. P. 72(b).

III. DISCUSSION

A. Legal Standard Governing Summary Judgment
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. Anderson, 477 U.S. at 250 n.4; Sec. Ins. Co., 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Jeffreys, 426 F.3d at 553; Wright v. Coughlin, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. Bldg. Trades Employers' Educ. Ass'n v. McGowan, 311 F.3d 501, 507-08 (2d Cir. 2002); see also Anderson, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies
**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. See generally Dkt. No. 29-5 at 2.

1. Legal Principles Governing Exhaustion Under the PLRA
The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. Ross, 136 S. Ct. at 1856; Woodford v. Ngo, 548 U.S. 81, 84 (2006); Porter v. Nussle, 534 U.S. 516, 524, 532 (2002); Williams v. Corr. Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. See Woodford, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); Wilson v. McKenna, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at \*1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules."[3] Woodford, 548 U.S. at 95; accord, Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007).

**Eleby v. Smith, Not Reported in Fed. Supp. (2017)**

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 21 of 87

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams,* 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams,* 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia,* the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly,* 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can —and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange,* 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross,* 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross,* 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross,* 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross,* the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[6] *Ross,* 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a

**Eleby v. Smith, Not Reported in Fed. Supp. (2017)**

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 22 of 87

grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks,

alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00478-LEK-TWD Document 22 Filed 01/30/20 Page 23 of 87

(2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

 **\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in Fed. Supp., 2017 WL 986123

## Footnotes

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9    In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. <u>Dkt. No. 22 at 22-23</u>. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10   If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Clarified on Denial of Reconsideration by Crichlow v. Fischer, W.D.N.Y.,
March 26, 2018

2017 WL 920753
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Kevin Damion CRICHLOW, Plaintiff,

v.

Brian FISCHER et al., Defendants.

6:15-CV-06252 EAW
|
Signed March 7, 2017

**Attorneys and Law Firms**

Kevin Damion Crichlow, Romulus, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office
Department of Law, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

 *1 Plaintiff Kevin Damion Crichlow ("Plaintiff") filed this
action pursuant to 42 U.S.C. § 1983 in the Southern District
of New York on October 16, 2012. (Dkt. 2). Plaintiff filed
an amended complaint seeking relief against 136 Defendants
on June 17, 2013. (Dkt. 12). The action was transferred to
this Court on April 28, 2015. (Dkt. 168). The action was
then severed by this Court on February 10, 2017. (Dkt. 223).
Following severance, 35 Defendants (together "Defendants")
remain. (See id. at 5-6).

Presently before the Court are: Defendants' motion for
summary judgment (Dkt. 177); Plaintiff's motion for
discovery (Dkt. 182); Plaintiff's motion to appoint counsel
(Dkt. 182); Plaintiff's motion for a stay (Dkt. 182); Plaintiff's
motion for a medical exam (Dkt. 187); Plaintiff's motion for
reconsideration (Dkt. 192); Plaintiff's motion to amend (Dkt.
192); Plaintiff's motion for a hearing (Dkt. 192); Defendants'
motion for sanctions (Dkt. 195); and Plaintiff's motion for
sanctions (Dkt. 198).

For the reasons stated below, Defendants' motion for
summary judgment is granted in part and denied in part;

Plaintiff's motion for discovery is denied without prejudice;
Plaintiff's motion to appoint counsel is denied without
prejudice; Plaintiff's motion for a stay is denied without
prejudice; Plaintiff's motion for a medical exam is denied;
Plaintiff's motion for reconsideration is denied; Plaintiff's
motion to amend is denied as moot; Plaintiff's motion for a
hearing is denied; Defendants' motion for sanctions is denied
without prejudice; and Plaintiff's motion for sanctions is
denied.

**I. Plaintiff's Allegations**
Plaintiff's amended complaint spans 142 pages. (See Dkt.
12). Following severance of the action into three separate
parts, this Court retained Plaintiff's claims in which he asserts
violations of his constitutional rights by Defendants relating
to Plaintiff's incarceration at the Wende Correctional Facility
("Wende") and treatment at Wyoming Community Hospital.
(See Dkt. 223).

Plaintiff alleges actions occurring at Wende beginning on or
about September 27, 2008—the date Plaintiff was transferred
to Wende—through his transfer to Eastern Correctional
Facility on November 16, 2010. (See Dkt. 12 at 14-36; Dkt.
12-1 at 1-12).

Plaintiff alleges inadequate or nonexistent medical care
throughout his incarceration at Wende, in violation of the
Eighth Amendment. Plaintiff argues that he was not provided
mental health treatment as required (Dkt. 12 at 19), and that
he was "unreasonably exposed to infectious disease" (id. at
25, 36; Dkt. 188 at 35-36, 38-39). Plaintiff alleges deficient
dental care from "2008 into 2013 at 3 [New York Department
of Corrections and Community Supervision] prisons." (Dkt.
12 at 36). He contends he was not provided care for "alot of
pain hip, jaw, hand, tooth's also need replacement of four's
lost teeths & restoration of function and 'oral surgery &
periodontics.' " (Id. at 31; see, e.g., Dkt. 12-1 at 1). Plaintiff
further alleges that he was denied dental care at Wende on
June 30, 2008, to fix a "broken jaw." (Dkt. 12 at 36). As
to his medical care, Plaintiff states that Defendant George
Boucher, M.D., was grossly negligent in misdiagnosing an
injury to Plaintiff's hand, which led to Plaintiff's receiving
the "wrong surgery" on January 13, 2010. (Dkt. 12-1 at 2).
Plaintiff complains that he was denied treatment for "injuries
hip, back, shoulder, head" for "about 68 months." (Id. at 3).
Plaintiff also asserts that he was subjected to a risk of disease
due to asbestos in Wende. (Dkt. 12 at 21-24, 31; Dkt. 188 at
35).

**\*2** Plaintiff also charges he was deprived of adequate nutrition and hygiene while incarcerated at Wende. Plaintiff claims that from April to September 2009, Defendants C.O. Bartels and C.O. Kevin Barlow "routinely deprived [Plaintiff] ... meaningful opportunities for yard, food, shower, exercise, adequately nutrition." (Dkt. 12 at 25). He makes similar claims against Defendants C.O. Richard Brooks ("Brooks") (*id.* at 32), and C.O. Alicia Humig ("Humig") (*id.* at 26). Plaintiff complains that he was "taken off" of a mandatory religious diet for months because he was not allowed to go to the mess hall. (*Id.* at 32). Plaintiff also alleges that because he is H.I.V. positive, a nutritious diet is critical to his health, and he was deprived of such a diet. (Dkt. 12-1 at 1, 3). Plaintiff asserts that on November 11, 2009, Humig and Defendant Sergeant Paul Olszewski ("Olszewski") refused to let him out of his cell, and placed him in keeplock for about six weeks. (Dkt. 12 at 32). Plaintiff further alleges that he was refused basic laundry services from 2008 through November 1, 2009. (*Id.* at 27).

Plaintiff complains that Defendant T.M.C. Christopher Zaluski ("Zaluski") and others failed to provide reasonable accommodations for Plaintiff's hearing disability. (Dkt. 12 at 14-16; Dkt. 12-1 at 1). Plaintiff alleges that he was in New York Department of Corrections and Community Supervision ("DOCCS") custody for six months before receiving hearing aids. (Dkt. 12 at 30; Dkt. 12-1 at 1). He also claims that he was denied equal access to opportunities and recreation in Wende because of his hearing disability, and that the failure to accommodate his hearing disability was retaliation for his standing up for himself and other disabled inmates. (Dkt. 12 at 33-35; Dkt. 12-1 at 11-12).

Plaintiff claims he was harassed and verbally abused while at Wende. He alleges numerous instances of sexual harassment by Defendant C.O. Attea, and states that he reported such harassment to others, including the superintendent of Wende. (*Id.* at 17-18, 19, 31). Plaintiff claims that on June 18, 2010, Brooks verbally abused and threatened Plaintiff. (Dkt. 12-1 at 8-9). Plaintiff asserts C.O. Corey Petties verbally abused and threatened Plaintiff on July 12, 2010. (*Id.* at 9-10). Plaintiff alleges that DOCCS has a "common practice to encourage and further its employee's, and officers discrimination and harassment and assault and [deprivation] of proper nutrition." (Dkt. 12 at 20).

Plaintiff also raises Fourteenth Amendment due process claims. Plaintiff complains of unspecified disciplinary proceedings that led a total of 180 days of disciplinary confinement between 2008 and 2010. (*Id.* at 29). Plaintiff claims his due process rights were violated because of the handling of "over 150" grievances filed through November 16, 2010, by Defendants Director Karen Bellamy ("Bellamy") and Sergeant William Scott ("Scott"). (*Id.* at 27-30). Plaintiff asserts that he was retaliated against for filing grievances and that no investigations were conducted into his claims. (*Id.* at 28). Plaintiff states that he filed over 300 grievances. (Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1).

He also alleges that on July 4, 2010, C.O. Hojsan destroyed Plaintiff's legal documents in the Wende law library, thereby depriving Plaintiff of an opportunity to be heard by the courts. (Dkt. 12-1 at 10-11). Hojsan also allegedly denied Plaintiff access to the law library. (*Id.* at 11).

Plaintiff complains that a fire broke out in his cell block on April 12, 2010, and that the correctional officers in the area, including Olszewski, failed to respond to calls for help. (*Id.* at 6-7). Plaintiff claims that he was denied "fresh-air" and was thereafter denied medical care. (*Id.* at 7).

Plaintiff further contends that on some unspecified date Zaluski instructed others not to let Plaintiff out of his cell, in retaliation for Plaintiff's filing of grievances against Zaluski. (Dkt. 12 at 30).

Plaintiff complains that Defendant Brian Fischer ("Fischer") —the commissioner of DOCCS during Plaintiff's incarceration at Wende—knew of constitutional violations against Plaintiff and failed to take action. (Dkt. 12-1 at 4-5). Plaintiff states that he personally sent "several letters" detailing inadequate health care and assault. (*Id.* at 4). Plaintiff also contends that Defendants "disregarded conditions posing an excessive risk to [his] health and safety ...," and that prison staff was inadequately trained. (*Id.*).

## II. Defendant's Motion for Summary Judgment

### A. Standard of Review

**\*3** Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after viewing the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (citing *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)). The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred. *See Anderson v. Rochester-Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 206 (2d Cir. 2003).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.,* 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But, summary judgment is generally not appropriate until after some discovery has occurred. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating that summary judgment is appropriate on the proper showing "after adequate time for discovery"); *see, e.g., Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("[S]ummary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." (emphasis original) (internal quotation marks and citations omitted)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom,* 201 F.3d at 97; *see also Trebor Sportswear Co. v. The Ltd. Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." (citing *Celotex,* 477 U.S. at 326)).

**B. Statute of Limitations**

Defendants argue that some of Plaintiff's claims are time-barred by the statute of limitations. (Dkt. 177-5 at 3). "In [§] 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions....' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50 (1989)). A § 1983 action filed in New York is subject

to a three-year statute of limitations. *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013).

Here, Plaintiff filed this action October 16, 2012. (Dkt. 1). Therefore, any claim arising before October 16, 2009, is barred by the statute of limitations. Plaintiff points to the "continuing violation doctrine" to save his otherwise time-barred claims. (Dkt. 209-3 at 21-22).

> [The continuing violation doctrine] applies to claims composed of a series of separate acts that collectively constitute one unlawful practice. The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a serial violation, but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment. Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable claim. A claim will be timely, however, only if the plaintiff alleges some non-time-barred acts contributing to the alleged violation.

**\*4** *Gonzalez v. Hasty,* 802 F.3d 212, 220 (2d Cir. 2015). Although the continuing violation doctrine generally applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice," *id.* at 220, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 292 (2d Cir. 2013) (quoting *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999)); *see, e.g., Shomo v. City of N.Y,* 579 F.3d 176, 182 (2d Cir. 2009).

Here, Plaintiff alleges four patterns of conduct which occurred both before and after October 16, 2009: (1) denial of adequate medical and dental treatment; (2) denial of adequate nutrition and hygiene; (3) discrimination and failure to accommodate based on Plaintiff's disability; and (4) denial of due process rights.

The continuing violation doctrine applies to Eighth Amendment claims for deliberate indifference to medical needs. *See Shomo,* 579 F.3d at 182 ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."). Plaintiff raises a number claims that he was denied adequate medical and dental treatment, which, taken together, could comprise an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff also complains of ongoing deprivations of adequate food and access to showers and laundry. Prison officials' Eighth Amendment obligations require that they "ensure that inmates receive adequate food, shelter, and medical care...." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

Defendants argue that Plaintiff failed to allege the existence of a policy of deliberate indifference. (Dkt. 196-2 at 10). The Court disagrees. Plaintiff's amended complaint includes allegations that senior prison officials, including Fischer, knew of ongoing violations related to Plaintiff's inadequate heath care but failed to take action. Plaintiff claims he sent letters to Fischer to point out the inadequacies of his health care at Wende. Plaintiff also attaches a reply letter from Bellamy in which Bellamy states that she is responding to Plaintiff's letters on behalf of "governor Cuomo and Commissioner Fischer." (Dkt. 209-4 at 2). Plaintiff also asserts that the practices complained of "are widespread, longstanding, and deeply embedded in the culture of all [DOCCS] agenc[ies], constitut[ing] unwritten [DOCCS] policies & customs." (Dkt. 12-1 at 5).

Similarly, the amended complaint can be read as alleging a continuing violation as to Defendants' indifference to Plaintiff's nutrition and hygiene needs. Plaintiff alleges that he was routinely deprived of meaningful opportunities to shower and exercise, and was not provided adequate nutrition. (Dkt. 12 at 25; *see, e.g., id.* at 26). Plaintiff states that while he was in keeplock, corrections officers were told not to feed him. (*Id.* at 26). He also claims that he was only allowed to shower six times in a nine-month period, and that "his clothing and linen's [sic] were never laundered." (*Id.* at 27).

Plaintiff's allegations are sufficient to establish a plausible claim of "an ongoing policy of deliberate indifference and acts taken in accordance with that policy." *See Taylor v. Goord,* Civil Action. No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825661, at *7 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted by* No. 9:09-CV-1036 (FJS/DEP), 2010 WL 3825656 (N.D.N.Y. Sept. 24, 2010). *Cf. Bussey v. Fischer,* Civil Action No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4862478, at *5 (N.D.N.Y. Aug. 1, 2011) (finding a plaintiff failed to allege an ongoing policy of deliberate indifference sufficient to show a continuing violation where the alleged unwritten policy was inconsistent with written policies and requirements), *report and recommendation adopted by* No. 9:10-CV-1021 (NAM/DEP), 2011 WL 4499324 (N.D.N.Y. Sept. 27, 2011). Thus, particularly at this stage of the proceedings, Plaintiff's pre-October 16, 2009, claims as to inadequate medical and dental treatment, as well as inadequate food and hygiene, survive Defendants' statute of limitations defense.

**\*5** Similarly, Plaintiff alleges ongoing discrimination because of his hearing disability in violation of the Eighth and Fourteenth Amendments, as well as the "Rehabilitation Act" and the Americans with Disabilities Act.[1] (Dkt. 12-1 at 1). Plaintiff alleges a pattern of discriminatory conduct, arguing that DOCCS and individual Defendants at Wende failed to accommodate his hearing disability. The last complained-of act of discrimination at Wende occurred on August 18, 2010, well within the three-year statute of limitations. Plaintiff alleges that prison staff at Wende continuously failed to provide him reasonable accommodations, such as providing working hearing aids. Plaintiff also states that other disabled prisoners were not provided reasonable accommodations. Such *pro se* allegations are sufficient, at this stage, to state the existence of an ongoing policy of disability discrimination against Plaintiff.

Plaintiff also claims due process violations related to the processing of his grievances and disciplinary hearings. In this context, the continuing violation doctrine does not apply to Plaintiff's Fourteenth Amendment due process claims because "[e]ach decision made without due process is a discrete violation, and the statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to." *Bunting v. Fischer,* 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *3 (W.D.N.Y. Aug. 4, 2016) (citing *Gonzalez,* 802 F.3d at 223), *report and recommendation adopted by* 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016). Thus, all of Plaintiff's claimed due process violations which occurred before October, 16, 2009, are subject to the statute of limitations and must be dismissed.

In sum, at this stage in the proceedings, Plaintiff's claims of deliberate indifference to medical care, inadequate food and hygiene, and the failure to provide reasonable accommodations for his hearing disability all survive Defendants' statute of limitations challenge. Plaintiff's due process claims which are based on the processing of his grievances and which arose before October 16, 2009, are time barred and must be dismissed.

## C. Failure to Exhaust Administrative Remedies

Next, Defendants argue that many of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. (Dkt. 177-5 at 4-6). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw v. Syed,* 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a summary judgment motion made in lieu of answer where inmate failed to exhaust administrative remedies). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw,* 686 F. Supp. 2d at 236 (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011). "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord,* 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York,* 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.' " *Dabney v. Pegano,* 604 Fed.Appx. 1, 3 (2d Cir. 2015) (quoting *Hemphill,* 380 F.3d at 686). However, the third prong of *Hemphill,* relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno,* 829 F.3d 118, 123 (2d Cir. 2016). The inquiry which used to be under the third prong of *Hemphill,* is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

**\*6** Here, Plaintiff claims he filed over 300 grievances, and seems to suggest that this is sufficient to exhaust his administrative remedies. (*See* Dkt. 209-3 at 8; *see, e.g.,* Dkt. 211 at 1). Plaintiff misunderstands the exhaustion requirement. The filing of a grievance is but the first step in exhausting administrative remedies. To exhaust DOCCS administrative remedies, a prisoner must appeal to CORC. Plaintiff's filing of 300 grievances, even if true, is insufficient to exhaust his remedies under § 1997e.

In response to Defendants' assertion that Plaintiff failed to exhaust his administrative remedies for most of his claims, Plaintiff claims that DOCCS lost or destroyed his grievances. (Dkt. 209-3 at 19 (claiming that DOCCS destroyed meritorious grievances); Dkt. 211 at 1 (same)). "Plaintiff's wholly conclusory and unsupported allegations that grievances are tampered with at [Wende] do not create a material issue of fact in this case." *See Mims v. Yehl,* Nos. 13-CV-6405-FPG, 14-CV-6304-FPG, 14-CV-6305-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014).

However, Defendants' submissions show that Plaintiff has satisfied the exhaustion requirement for some potential claims. Defendants' sworn declaration from Jeffery Hale—the Assistant Director of the DOCCS Inmate Grievance Program—states that Plaintiff exhausted 25 grievances between the beginning of his incarceration in 2008 and the filing of this action in October 2012. (Dkt. 177-3 at 2). Of those 25 exhausted grievances, 23 relate to Plaintiff's incarceration at Wende. (*See id.* at 5-6). Defendants provide only a printout

listing the titles and grievance numbers of the 23 exhausted grievances that arose at Wende (*see id.*); they did not submit any paperwork relating to the grievances themselves or the final resolution of any exhausted grievance. (*See* Dkt. 177).

Plaintiff clearly exhausted some potential claims which could be raised in federal court pursuant to § 1997e. However, the Court cannot determine whether the claims Plaintiff raises in this action are those which have been exhausted because neither party submitted sufficient information which would allow the Court to make such a determination. It is possible that none of Plaintiff's exhausted grievances relate to the named Defendants in this action; it is equally possible that all 23 exhausted grievances relate to actions taken by the named Defendants. Since Defendants seek summary judgment on this basis, it is their burden to establish the lack of any issue of material fact on the exhaustion argument. They have failed to meet this burden. Thus, Defendants' motion based upon Plaintiff's alleged failure to exhaust is denied.

**D. Plaintiff's Due Process Claims**

Regardless of whether grievances were exhausted or whether the claims were timely asserted, Plaintiff's due process claims relating to disciplinary confinement and grievance processing fail as a matter of law and summary judgment is appropriate.

**1. SHU Confinement**

Plaintiff alleges due process claims related to disciplinary proceedings which led to disciplinary confinement. (Dkt. 12 at 29). "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra,* 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population,'" in determining whether a liberty interest is implicated. *Vasquez v. Coughlin,* 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and

somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

**\*7** There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz,* 380 F.3d at 654-55; *see also Tafari v. McCarthy,* 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.' " (quoting *Palmer,* 364 F.3d at 65)).

Here, Defendants argue that none of Plaintiff's disciplinary confinements violated Plaintiff's due process rights. (Dkt. 177-5 at 6-7). Defendants submitted Plaintiff's prison disciplinary record. (*See* Dkt. 177-4). The records show Plaintiff was subjected to only one non-time-barred SHU confinement at Wende. (*See id.* at 8). That SHU confinement was for 30 days. (*Id.*). Plaintiff does not argue that the conditions of his confinement were in any way abnormal or atypical. Because Plaintiff's disciplinary confinement fell within the "short" range and did not involve any abnormalities, it did not implicate any liberty interest sufficient to raise a due process violation. Plaintiff's due process claims as to disciplinary confinement at Wende fail as a matter of law.

**2. Grievance Processing**

Plaintiff also raises due process complaints about the handling of his grievances. (*See* Dkt. 12 at 27-30; Dkt. 209-2 at 21). It is well-established that inmates do not have a protected liberty interest in the processing of their prison grievances. *See Torres v. Mazzuca,* 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). "[Although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." *Cancel v. Goord,* No. 00 CIV 2042 LMM, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001) (internal citations omitted).

Plaintiff has no liberty interest in the prison grievance program. Even if Defendants violated their own procedures in

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 31 of 87

processing Plaintiff's grievances, Plaintiff cannot find relief under § 1983. A prisoner may raise due process claims related to disciplinary hearings. *Montalvo v. Lamy,* 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015); *Richard v. Fischer,* 38 F. Supp. 3d 340, 358-59 (W.D.N.Y. 2014). However, Plaintiff's allegations here relate only to allegedly faulty grievance processing; Plaintiff makes no allegations of due process violations related to disciplinary hearings. Therefore, these claims fail as a matter of law.

Plaintiff's only claim against Defendants Bellamy and Scott are the due process claims related to the grievance process. Because Plaintiff's claims fail, Defendants Bellamy and Scott must be dismissed from the action.

**E. Retaliation**

Finally, Plaintiff alleges that he was retaliated against because he filed grievances. (Dkt. 12 at 28).

> A prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of grievances. Retaliating against inmates for filing grievances by filing false disciplinary reports violates the First Amendment. In fact, our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim. Accordingly, a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.

**\*8** *Richard v. Fischer,* 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) (internal quotation marks and citations omitted). Here, Plaintiff asserts that because of his filing of numerous grievances, unspecified Defendants retaliated by filing false misbehavior reports. (*See* Dkt. 12 at 28). Defendants have not raised any argument related to Plaintiff's retaliation claim.

(*See* Dkt. 177-5). Therefore, the Court will not dismiss the retaliation claim.

**F. Summary**

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to Plaintiff's alleged due process claims, but is denied as to Plaintiff's Eighth Amendment claims related to the alleged denial of adequate medical treatment and adequate food and nutrition, and it is also denied with respect to Plaintiff's claims alleging retaliation and the failure to provide reasonable accommodations for Plaintiff's disability.

**III. Plaintiff's Motion for Discovery**

Plaintiff moves this Court to open discovery. (Dkt. 182). Plaintiff states that he is "asking for interrogatory answers and other evidence [to] show that the material facts are in dispute." (*Id.* at 2). Plaintiff also states that discovery will allow him to show that he filed "over 300 grievances." (*Id.*).

The Court construes Plaintiff's motion as one under Fed. R. Civ. P. 56(d). In opposing a summary judgment motion, if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

> A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."

*Alphonse Hotel Corp. v. Tran,* 828 F.3d 146, 151 (2d Cir. 2016) (quoting *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994)).

Here, Plaintiff has not submitted any sworn affidavit or declaration requesting particular information, nor has he described how the material requested is germane to his defense related to the due process claims (the only claims on which the Court has granted summary judgment). As discussed above, the due process claims are barred as a matter of law, and Plaintiff has not made a showing that

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 32 of 87

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

discovery would alter that conclusion. Therefore, the motion for discovery is denied without prejudice to Plaintiff seeking discovery with respect to the claims that remain.

## IV. **Plaintiff's Motion to Appoint Counsel**

As part of Plaintiff's motion for discovery, he also moves this Court to appoint counsel "to assist [Plaintiff] in preparing his case...." (Dkt. 182 at 5). Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *see, e.g., Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.,* 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona,* 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

**\*9** Plaintiff was in prison when he filed the complaint, and remains in custody. (*See* Dkt. 1; Dkt. 4). Plaintiff has already been granted *in forma pauperis* status in this case. (Dkt. 5). In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 4 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $1.07. (*Id.* at 3). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, the *Cooper* factors all weigh against appointing counsel at this time. Plaintiff's motion papers provide no information suggesting that he attempted to obtain counsel to assist in his case. (*See* Dkt. 182 at 5). As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper,* 877 F.2d at 173. In the absence of an affirmative statement by Plaintiff otherwise, the Court assumes that he has not

sought an attorney to represent him. This weighs against the appointment of counsel.

The Court also finds that the Plaintiff has failed to show anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles, including Defendants' defense that Plaintiff failed to exhaust his administrative remedies. This too weighs heavily against the appointment of counsel.

Balancing the factors set forth in *Cooper,* the Court finds that appointing counsel is inappropriate at this time, and Plaintiff's motion is denied without prejudice.

## V. **Plaintiff's Motion for a Stay**

Plaintiff moves this Court to stay the action while he undergoes surgery on his wrist, arm, and back. (Dkt. 182 at 6). Plaintiff does not disclose the date of the surgery, or any further information which would allow the Court to evaluate the necessity of such a stay. (*See id.*). Plaintiff has not sufficiently shown a need for a stay in the litigation. Therefore, the motion is denied without prejudice.

## VI. **Plaintiff's Motion for a Medical Exam**

Plaintiff asks this Court, pursuant to Fed. R. Civ. P. 35, to order a medical examination so that he can access medical care for currently occurring medical issues. (Dkt. 187). Rule 35 permits a court to order "a party whose ... condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody...." Fed. R. Civ. P. 35. "In order to obtain a medical examination under Rule 35, the moving party must establish 'good cause....' " *Kelly v. Times/review Newspapers Corp.,* CV 14-2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016). " 'Rule 35 does not, however, authorize a party to file a motion for his own physical examination.' Neither may a plaintiff invoke Rule 35 in order to receive medical care." *Rodriguez v. Conway,* No. 10-CV-6243L, 2011 WL 4829725, at *3 (W.D.N.Y. Sept. 6, 2011) (citations omitted), *affirmed in relevant part by* No. 10-CV-6243L, 2011 WL 4829869 (W.D.N.Y. Oct. 12, 2011).

Here, Plaintiff's current medical condition is not "in controversy." Plaintiff has already submitted records regarding his medical and dental maladies for the time period at issue in this action. (*See* Dkt. 209-5 at 1-27). Defendants have in no way challenged the substance of Plaintiff's claimed

medical needs during his incarceration at Wende from 2008 to 2010. Further, Plaintiff cannot use Rule 35 to receive medical care. Therefore, Plaintiff's motion is denied.

## VII. Plaintiff's Motion for Reconsideration

**\*10** Plaintiff titles his motion at Dkt. 192 as a "motion for reconsideration," however, he does not point to any order or decision of the Court for which he seeks reconsideration. Although the Court has the inherent power to reconsider and modify interlocutory orders prior to the entry of judgment, *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Williams v. Cty. of Nassau, 779 F. Supp. 2d 276, 280 & n.2 (E.D.N.Y. 2011)* ("A district court retains absolute authority to reconsider or otherwise affect its interlocutory orders any time prior to appeal."), *aff'd,* 581 Fed.Appx. 56 (2d Cir. 2014), Plaintiff has not provided sufficient information to allow the Court to decide his motion. Therefore, Plaintiff's motion is denied.

## VIII. Plaintiff's Motion to Amend

Plaintiff also filed a motion which, in essence, asks the Court to allow Plaintiff to amend his response to Defendants' motion for summary judgment. (Dkt. 192). The Court granted such relief already (Dkt. 208), and Plaintiff already filed amended response papers (Dkt. 209; Dkt. 211). Therefore, Plaintiff's motion is denied as moot because he has already received the requested relief.

## IX. Plaintiff's Motion for a Hearing

Plaintiff further asks the Court to hold a hearing "to cover several issue[s] that Plaintiff [does not] fully[ ] understand." (Dkt. 192 at 3). Plaintiff also seeks scheduling conferences or orders pursuant to Fed. R. Civ. P. 16(b) and 26(f). The Court finds that neither a hearing nor a scheduling order is necessary at this time. If Plaintiff has legal questions, he may retain an attorney or do further legal research to answer those questions. It is not the Court's role to answer such questions. Thus, Plaintiff's motion is denied. Once an answer is filed, the case will proceed to discovery.

## X. Defendant's Motion for Sanctions

Defendants move this Court to impose sanctions on Plaintiff pursuant to Fed. R. Civ. P. 11. (Dkt. 195). Defendants argue

that, as part of his response to the motion for summary judgment, Plaintiff filed a grievance exhausted by another inmate, claiming the grievance as one Plaintiff had himself exhausted. (Dkt. 195-2 at 1-2 (citing Dkt. 188-8 at 2)). Plaintiff allegedly did so in an attempt to show that the Jeffery Hale declaration was knowingly false and that Defendants had destroyed Plaintiff's grievances. (*Id.* (citing Dkt. 188 at 12)).

A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 (2d Cir. 2012)* (citation omitted). "Further, even when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction is committed to the district court's discretion.' " *Id.* (quoting *Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004)*).

Defendants argue that "the only appropriate sanction in this matter is dismissal." (Dkt. 195-2 at 3). The Court disagrees. The grievance at issue relates to a complaint which arose during 2012 and 2013. (Dkt. 188-8 at 2). Even if Plaintiff was the grievant, the grievance itself would be irrelevant to this Court's inquiry into Plaintiff's incarceration conditions from 2008 until 2010. Indeed, the grievance at issue was not taken into account during the Court's review of the motion for summary judgment because it is irrelevant to the time frame at issue. Further, although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, *see Ceglia v. Zuckerberg,* No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), *report and recommendation adopted by* 2014 WL 1224574 (W.D.N.Y. 2014), *aff'd,* 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. However, **Plaintiff is hereby warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions.**

**\*11** Defendants' motion is denied without prejudice.

## XI. Plaintiff's Motion for Sanctions

Crichlow v. Fischer, Not Reported in Fed. Supp. (2017)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 34 of 87

Finally, Plaintiff asks this Court to impose sanctions on Defendants for making materially misleading and false statements to the Court in its response in opposition (Dkt. 174) to Plaintiff's letter motion (Dkt. 172). (Dkt. 198). The Court denied Plaintiff's motion as unrelated to the claims at issue in this action. (Dkt. 176).

Read generously, Plaintiff argues that Defendants' counsel failed to acknowledge in his response that one of the individuals named in the letter motion was also a named Defendant in this action. (*See* Dkt. 198 at 1-2). Such a misstatement is immaterial and does not warrant sanctions. As Plaintiff failed to assert any material violation of Rule 11, sanctions are inappropriate, and Plaintiff's motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment (Dkt. 177);

INSTRUCTS the Clerk of Court to terminate Defendants Bellamy and Scott from this action;

DIRECTS Defendants to answer the complaint within 30 days of the filing of this Decision and Order;

DENIES Plaintiff's motion for discovery (Dkt. 182) without prejudice;

DENIES Plaintiff's motion to appoint counsel (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a stay (Dkt. 182) without prejudice;

DENIES Plaintiff's motion for a medical exam (Dkt. 187);

DENIES Plaintiff's motion for reconsideration (Dkt. 192);

DENIES Plaintiff's motion to amend (Dkt. 192) as moot;

DENIES Plaintiff's motion for a hearing (Dkt. 192);

DENIES Defendants' motion for sanctions (Dkt. 195) without prejudice; and

DENIES Plaintiff's motion for sanctions (Dkt. 198).

SO ORDERED.

## **All Citations**

Not Reported in Fed. Supp., 2017 WL 920753

---

Footnotes

1    Defendants have not made any statute-of-limitations arguments regarding Plaintiff's claims under the Rehabilitation Act or the Americans with Disabilities Act. (*See* Dkt. 177-5 at 3). Thus, the Court only addresses Defendants' statute-of-limitation argument as it relates to Plaintiff's constitutional claims of discrimination under § 1983.

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Grubbs v. Serrell, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 35 of 87

2018 WL 1175232
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bobby GRUBBS, Plaintiff,

v.

John SERRELL, Correction Officer, Marcie
Everleth, Correction Officer, Eugene
Raimo, Correction Officer, Defendants.

9:14-CV-0467 (MAD/CFH)
|
Signed 03/06/2018

**Attorneys and Law Firms**

WILSON, ELSER LAW FIRM, OF COUNSEL: MARC J.
KAIM, ESQ., 200 Great Oaks Boulevard-Suite 228, Albany,
New York 12203, Attorneys for Plaintiff.

NEW YORK STATE ATTORNEY GENERAL, OF
COUNSEL: LOUIS JIM, ESQ., COLLEEN D. GALLIGAN,
ESQ., The Capitol, Albany, New York 12224, Attorneys for
Defendant.

**DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Bobby Grubbs brought this prisoner civil
rights action pursuant to 42 U.S.C. § 1983. *See* Dkt.
No. 12. Presently before the Court is Magistrate Judge
Christian F. Hummel's Report-Recommendation and Order
recommending that the Court dismiss Plaintiff's remaining
claims with prejudice. *See* Dkt. No. 122 at 2. For the following
reasons, the Report-Recommendation and Order is adopted in
its entirety.

The Court presumes the parties' familiarity with the facts in
this case and recites only those facts necessary to review
the Report-Recommendation and Order. [1] Plaintiff filed the
amended complaint in this action on August 25, 2014.
*See* Dkt. No. 12. Following the Court's Order deciding
Defendants' motion for summary judgment, all but two of
Plaintiff's claims were dismissed. *See* Dkt. No. 72 at 2.
Plaintiff's only remaining claims are for excessive force
arising out of two separate incidents that took place at Great
Meadow Correctional Facility ("Great Meadow C.F."). The
first incident took place on February 1, 2012, when Plaintiff
alleges that Correction Officer ("CO") John Serrell used
excessive force against Plaintiff, and CO Marcie Everleth
failed to intervene. *See* Dkt. No. 71 at 3-5. The second
incident occurred on January 22, 2013, when Plaintiff alleges
that CO Eugene Raimo used excessive force against Plaintiff
as he was transferring cells. *See id.* at 5-6.

On September 11, 2017, the Court set a trial date to resolve
Plaintiff's remaining claims. *See* Dkt. No. 85. On December 4,
2017—just one week before the trial was scheduled to begin
—Defendants submitted a letter requesting that the Court
hold an exhaustion hearing to determine whether Plaintiff
exhausted his administrative remedies before filing this action
in federal court. *See* Dkt. No. 92. Despite the last minute
nature of Defendants' request, the Court agreed to hold an
exhaustion hearing, which took place in front of Magistrate
Judge Hummel on December 14, 2017. *See* Dkt. No. 121.
After the hearing, Magistrate Judge Hummel filed the Report-
Recommendation and Order that is presently before the Court
recommending that the Court dismiss Plaintiff's remaining
claims with prejudice. *See* Dkt. No. 122 at 2.

In reviewing a report and recommendation, a district court
"may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1)(C). When a party makes specific
objections to a magistrate judge's report, the district court
engages in *de novo* review of the issues raised in the
objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d
301, 307 (N.D.N.Y. 2008). When a party fails to make
specific objections, the court reviews the magistrate judge's
report for clear error. *See Farid*, 554 F. Supp. 2d at 307;
*accord Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL
2725126, \*1 (S.D.N.Y. Nov. 29, 2004). Since Plaintiff has
not filed objections, the Court will review the Report-
Recommendation and Order for clear error.

**\*2** The Prison Litigation Reform Act ("PLRA") states that
"[n]o action shall be brought with respect to prison conditions
under section 1979 of the Revised Statutes of the United
States (42 U.S.C. § 1983), or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available
are exhausted." 42 U.S.C. § 1997e(a). This exhaustion
requirement applies to all suits brought by inmates regarding
aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516,
532 (2002). Inmates must exhaust all available administrative
remedies even if they are seeking only money damages that

Grubbs v. Serrell, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 36 of 87

are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing ... (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr.*

*Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

In the present matter, Magistrate Judge Hummel correctly determined that Plaintiff failed to exhaust his administrative remedies as to either of his remaining excessive force claims. *See* Dkt. No. 122-1 at 91-92. First, Plaintiff filed a grievance regarding his excessive force claim against COs Serrell and Everleth, but he failed to appeal the Superintendent's denial of his grievance to CORC. *See id.* at 88-89. Second, Plaintiff also filed a grievance relating to his encounter with CO Raimo, but the grievance makes no reference to CO Raimo engaging in excessive force. *See Johnson v. Annucci*, No. 15-CV-3754, 2016 WL 3847745, *4 (S.D.N.Y. July 7, 2016) ("Second Circuit case law is clear that the grievance standard is similar to notice pleading in that a grievance 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it") (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)); *see also Singh v. Lynch*, 460 Fed. Appx. 45, 47 (2d Cir. 2012) (holding that the plaintiff failed to exhaust for the purposes of his assault claim where the grievance did not include any allegation of assault).

**\*3** After carefully reviewing the parties' submissions, the transcript of the exhaustion hearing, Magistrate Judge Hummel's Report-Recommendation and Order, the applicable law and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report, Recommendation, and Order (Dkt. No. 122) is **ADOPTED in full** and Plaintiff's amended complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1175232

Footnotes

Grubbs v. Serrell, Not Reported in Fed. Supp. (2018)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 37 of 87

1    For a fuller statement of the background in this case, see Magistrate Judge Christian Hummel's August 18, 2016 Report-Recommendation and Order. *See* Dkt. No. 71.

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 38 of 87

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jonathan MENA, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]
On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he

could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 39 of 87

took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

## B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts

(that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at \*3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund,* No. 03-cv-7421 (KMK), 2005 WL 1026330, at \*1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d

*Mena v. City of New York, Not Reported in Fed. Supp. (2016)*

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 40 of 87

at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

## III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days[,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance,

[p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the

books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams,* 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross,* 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner,* 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross,* 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin,* 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D)(9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross,* 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross,* 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary

circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams,* 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams,* 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross,* 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g., Winston v. Woodward,* No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

IV. CONCLUSION

**Mena v. City of New York, Not Reported in Fed. Supp. (2016)**

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 42 of 87

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

2009 WL 602890
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gary WHITE, Plaintiff,

v.

Superintendent Robert ERCOLE, Defendant.

No. 06 Civ. 11361(DAB).
|
March 3, 2009.

West KeySummary

1    **Civil Rights**

    👉 Criminal Law Enforcement; Prisons

An inmate's transfer from one state prison to a different state prison did not give him a valid excuse for his failure to exhaust his administrative remedies prior to filing a § 1983 action based on a "slip and fall" incident. The inmate alleged that the prison did not put up notices that there was a wet floor and as a result he slipped and hit his face into the cell bars. After his transfer to another state prison, he remained in the custody of the same agency. As long as he was in the custody of the agency against which he had grievances, he was required to use available grievance procedures. 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

Gary White, Ossining, NY, pro se.

*ORDER*

DEBORAH A. BATTS, District Judge.

**\*1** This matter is before the Court upon the November 10, 2008 Report and Recommendation ("Report") of United States Magistrate Judge Douglas F. Eaton. The Report recommends that the Defendant's Motion to Dismiss the Complaint be GRANTED. (Report at 15.)

According to 28 U.S.C. § 636(b)(1)(C), "[w]ithin ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations." 28 U.S.C. § 636(b)(1)(C); *see also* Fed.R.Civ.P. Rule 72(b) (stating that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations"). Despite being advised of this procedure in Magistrate Judge Eaton's Report and Recommendation, to date, no specific objections to said Report and Recommendation have been filed.

Having reviewed the Report and Recommendation, and finding no clear error on the face of the record, *see* 28 U.S.C. § 636(b) (1)(B), it is hereby

ORDERED AND ADJUDGED as follows:

1. The Report and Recommendation of United States Magistrate Judge Douglas F. Eaton, dated November 10, 2008, be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court in its entirety;

2. Upon entry of judgment in favor of Defendant, the Clerk of Court is directed to CLOSE the docket for this case.

SO ORDERED.

*REPORT AND RECOMMENDATION TO JUDGE BATTS*

DOUGLAS F. EATON, United States Magistrate Judge.

Gary White, a *pro se* prisoner, has brought this suit under the civil rights statute, 42 U.S.C. § 1983, based on a "slip and fall" incident that occurred on August 25, 2006, while he was housed at Green Haven Correctional Facility. His Complaint (dated September 5, 2006) was mailed from Green Haven with a postmark of September 12, 2006.

On January 19, 2007, Assistant Attorney General Donald Nowve served and filed a Notice of Motion to Dismiss pursuant to Fed. R. Civ. Pr. 12(b)(6), along with his Declaration, a supporting Memorandum of Law ("Def.Mem.") and a 1/16/07 Declaration of Thomas G. Eagen.[1]

On April 25, 2007, I received from White an undated Affirmation in Opposition; I am annexing it to this Report. AAG Nowve served and filed a Reply Memorandum of Law

on June 7, 2007. I recommend that Judge Batts dismiss the Complaint because White failed to exhaust his administrative remedies; moreover, the Complaint merely alleges negligent conduct that does not rise to the level of a violation of the federal Constitution.

The Complaint is on the standard form provided by our Court's Pro Se Office for prisoners bringing § 1983 actions. White describes the incident that prompted this lawsuit as follows:

> On 8–25–06 at approximately 11:30 a.m. I was returning to my cell—E-block—237. As I was walking to my cell, I slipped in a massive amount of water. That was not mopped up .... There were no wet floor signs on the company [premises?] to inform anyone the floor was wet! Because of the negl[ig]ence of this incident, I slipped and fell and hit my face area on the cell bars. At which time I was taken to the facility hospital, and then transferred to the outside hospitals. I advised the doctor of what happen[ed], and he confirmed my injuries were sustained by hitting my face on a very hard surface (bars). There have been several complaints, regarding the placement[ ] of wet floor signs. Nothing has been resolved through the I.L.C. [Inmate Liason Committee] or grievance dept. Wet floor signs are a mandatory procedure according to safety procedures! For the safety of all, not just myself the Supt. of this facility is [ ]liable and neglects to [en]force the safety procedures required by law.

 *2  White alleges that four of his lower teeth "were completely knocked out, [but] were put back in place by medical wire."

In Part IV of the form Complaint ("Exhaustion of Administrative Remedies"), White states that he filed a grievance "concerning safety pre-cautions" with the "inmate grievance—I.L.C.". Question F.2 on the form asks: "What

was the result, if any?" To this he answered: "Never spoke to me, never had a hearing." Question F.3 asks: "What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process." White responded: "(None) I never received a final decision."

In his Memorandum of Law, AAG Nowve urges our Court to dismiss the Complaint for three separate reasons. First, White failed to exhaust his administrative remedies. Second, negligence does not rise to the level of a constitutional violation. Third, White does not allege any personal involvement by Superintendent Ercole in the alleged failure to post signs warning about the wet floor.

In support of the first argument, Thomas Eagen's Declaration states that (1) Green Haven's records show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs, and (2) the records of the Central Office Review Committee ("CORC") show that White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B).

White responds in his Affirmation in Opposition:

> 5) The plaintiff did file a grievance with regards to a slipping and falling incident that took place at Green Haven. It is the plaintiff's view that he received no response, due to corrupt measures taken to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level, for review, and responds thereby denying plaintiff his liberty and constitutional right to due process. Soon thereafter plaintiff was transferred [to Sing Sing].

Pursuant to *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), I will give a liberal construction to this statement and the rest of his affirmation. I read White's arguments to be (1) that an appeal to CORC would have been futile ("such grievance could not realistically be brought to a CORC level"), and (2) that his transfer from Green Haven to Sing Sing somehow precluded him from pursuing the grievance process regarding events that occurred at Green Haven. In

essence, White is asking our Court to excuse his failure to exhaust administrative remedies, and to address the merits of his complaint despite the Prison Litigation Reform Act.

The Reply Memorandum points out that White has failed to submit any evidence to support his allegation that he filed an initial grievance. Further, it is undisputed that White took no steps to appeal to CORC. Hence, the main issue is whether he has shown any justification that would excuse him from the statutory requirement of full exhaustion of all administrative remedies, including all appeals.

*DISCUSSION*

 **\*3** When ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In addition, the court must draw all reasonable inferences in favor of the plaintiff. *Johnson v. Newburgh Enlarged School District,* 239 F.3d 246, 250 (2d Cir.2001). Because White is a *pro se* plaintiff, his complaint "is to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted) However, "to survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient " 'to raise a right to relief above the speculative level.' " *Atsi Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007), *quoting Twombly,* 127 S.Ct. at 1965 (2007).

In a § 1983 case where the defense argues lack of exhaustion, the court has the option of converting a dismissal motion into a motion for summary judgment, so that the Court may consider materials outside the pleadings in order to resolve the issue of exhaustion. Fed. R. Civ. Pr. 12(b)(6) and 12(d); *Collins v. Goord,* 438 F.Supp.2d 399, 411–12 (S.D.N.Y.2006) (Mukasey, J.). In my view, Mr. Eagen's Declaration is an appropriate document to be considered.

1. *White failed to exhaust his administrative remedies.*
In 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court made clear that this exhaustion requirement is mandatory, and that it applies "irrespective of the forms of relief sought and offered through administrative avenues," *id.* at 741, n. 6, as long as a prison grievance tribunal had authority to take some responsive action. Further, it applies to all prisoners seeking redress for prison circumstances or occurrences, regardless of whether a prisoner complains about general prison conditions or about a specific incident. *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Moreover, the PLRA requires that the prisoner's exhaustion must be "proper." *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006). "This means ... that a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford,* 126 S.Ct. at 2384.

The New York State Department of Correctional Services ("DOCS") has an established, formal, internal administrative grievance procedure for prisoner complaints. See 7 N.Y.C.R.R. Part 701 "Inmate Grievance Program." The DOCS Inmate Grievance Program is essentially a three-step process. 7 N.Y.C.R.R. § 701.1(c), § 701.5. First, an inmate must submit his grievance to the Inmate Grievance Review Committee ("IGRC") at his facility. Second, after receiving a written response from the IGRC, the inmate may appeal to the superintendent. Third, after he receives the superintendent's written response, he may appeal to the Central Office Review Committee ("CORC") in Albany. 7 N.Y.C.R.R. § 701.5.[2] *Before* filing a § 1983 action in federal court, a New York prisoner must appeal all the way to the CORC.

 **\*4** Thomas Eagen is the Director of the Inmate Grievance Program and he is custodian of the records maintained by CORC, which is the body that renders final administrative decisions under the Inmate Grievance Program. In his Declaration, Director Eagen states that CORC's files and computer database contain records of all appeals received from the IGP Offices of all New York State prisons going back to 1990. CORC's records show that Gary White never appealed to CORC about any grievance except a 2002 grievance about a use of force (Exh. B). Director Eagen

further states that defense counsel obtained Green Haven's records, which show only two 2006 grievances by White (Exh. A) neither of which concerned any slippery condition or any lack of "wet floor" signs.

If, for the sake of argument, we were to accept White's statement that he filed an initial grievance, nevertheless he failed to comply with the requirement of full and proper exhaustion—it is **undisputed** that he took no steps to appeal to CORC. He alleges that Green Haven authorities "never spoke to me, never had a hearing," but this does not excuse his failure to appeal to the next level. [3] The fact that he did not complete the whole process means that he failed to exhaust the procedure made available by DOCS.

Lack of exhaustion "is not jurisdictional," but is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007). If an inmate files a federal lawsuit before completely exhausting the grievance procedures and appeals, then the Court must normally dismiss the unexhausted claim. 42 U.S.C. § 1997e(a). *Jones,* 127 S.Ct. at 925–26. However, prior to the Supreme Court's *Woodford* decision, the Second Circuit issued several decisions saying that, notwithstanding the mandatory nature of the PLRA, there may be some circumstances where a failure to exhaust may be excused. [4] Judge Mukasey later discussed such possible exceptions in *Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006), decided three weeks after the Supreme Court's *Woodford* decision. He noted that "parts of the [Second Circuit's] *Hemphill* inquiry may be in tension with *Woodford." Collins,* at 411, n. 13. The Second Circuit has not yet fully addressed the extent to which the leniency of its earlier decisions may now be invalidated by *Woodford.* See, *Macias v. Zenk,* 495 F.3d 37, 41, 43–44 (2d Cir.2007), and *Benjamin v. Commissioner,* 2008 WL 4280074 (2d Cir. Sept.18, 2008) (both discussing threats). However, White's case is easily resolved without reaching that issue.

White's affirmation implicitly asserts that he qualifies for an exception to *Woodford's* general requirement of full and proper exhaustion. However, he does not allege any circumstances that would fit any exception recognized by the Second Circuit, whether before or after *Woodford.* White says: "It is the plaintiff's view that he received no response [because prison officials took] corrupt measures ... to discontinue, dispose and to void grievance, and so such grievance could not realistically be brought to a CORC level." (Aff. in Opposition, ¶ 5.) But he presents no specifics to support his "view" that there may have been "corrupt measures," nor any

plausible, objective reason why he could not "realistically" appeal to CORC in 2006. Back in 2002, he did appeal an unrelated grievance to CORC (see Exh. B to the Eagen Declaration).

**\*5** Even in a *pro se* complaint, conclusory assertions do not suffice—the party opposing a summary judgment motion "may not rest upon the mere allegations or denials of his pleading ... but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is true even when the issue is exhaustion. See *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 348 (S.D.N.Y. July 17, 2002), where Judge Marrero ruled:

> Although Rodriguez asserts that he fully exhausted all available remedies, these assertions are insufficient to overcome a motion for summary judgment, even for a *pro se* plaintiff. Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements for summary judgment, and a *pro se* party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment. Rodriguez has provided no evidence that he received a final determination from CORC before he commenced this action.

(quotation marks and citations omitted).

Nor does White's transfer from one State prison to a different State prison give him a valid excuse for his failure to exhaust. [5] He mailed his Complaint to our Court from Green Haven, only two weeks after he slipped and fell there. Later, he was transferred from Green Haven to Sing Sing, but he remained in the custody of the same agency, namely DOCS. "As long as [the prisoner] was in the custody of the agency against which he had grievances, ... he was required to use available grievance procedures." *Berry,* 366 F.3d 85, 88 (2d Cir.2004). It is immaterial that courts have been more lenient with a prisoner who was transferred from a City prison to a State prison (*Berry* ) or from a County jail to a State prison (*Rodriguez v. Westchester County Jail Correctional Dept.,* 372 F.3d 485, 488 (2d Cir.2004).

If a prisoner's failure to exhaust is not justified, then the court must dismiss with prejudice. *Berry,* 366 F.3d at 87–88; *Giano,* 380 F.3d at 675. Accordingly, I recommend that Judge Batts dismiss White's complaint for failure to exhaust his administrative remedies.

2. *Negligence is a matter of state law, is not actionable under § 1983, and and does not rise to a constitutional violation.*
Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." Thus, to recover under this section, a plaintiff must show a violation of a federal constitutional or statutory right.

In *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court held:

> We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.

(Emphasis in the original.) The Court elaborated:

> The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.

* * *

> **\*6** We think that the actions of prison custodians in leaving a pillow on the prison stairs, or mislaying an inmate's property, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

* * *

... "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner, *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) .... Where a government official's act causing injury to life, liberty, or property is merely negligent, "no procedure for compensation is constitutionally required." *Parratt,* supra, 451 U.S., at 548, 101 S.Ct., at 1919 (POWELL, J., concurring in result) (emphasis added).

*Daniels,* 474 U.S. at 331–33, 106 S.Ct. at 665–66.

White's Complaint alleges conduct that amounts to simple negligence, not a violation of a federal constitutional or statutory right. *Daniels* and its progeny clearly preclude White's lawsuit. See, *e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998) ( "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Shannon v. Jacobowitz,* 394 F.3d 90, 94 (2d Cir.2005) ("By ruling in *Daniels* that a negligent act could not amount to a constitutional deprivation, the Court ... clearly articulated that a finding of intentional conduct was a prerequisite for a due process claim"); *Davis v. Reilly,* 324 F.Supp.2d 361, 367 (E.D.N.Y.2004) ("[F]ailure to provide shower mats does not rise to the level of a constitutional violation within the meaning of Section 1983 and, thus is not actionable").

3. *The Complaint does not allege personal involvement by Superintendent Ercole.*
White names Superintendent Robert Ercole as the sole defendant. But he does not allege that Ercole was personally involved in leaving water on the floor without putting up warning signs. Nor does he allege that, prior to the injury, Ercole had personal knowledge of the wet floor or the lack of signs. White merely alleges that "The supt. of this facility is [ ]liable and neglects to [en]force the safety procedures required by law," and "At a minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard." (Complaint, p. 3; Aff. in Opposition ¶ 6.) Thus, even if White had alleged conduct which could rise to the level of a constitutional violation, and even if he had exhausted his administrative remedies, our Court would have to dismiss the Complaint against the sole defendant.

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006), citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations and internal quotation marks omitted). [6] Personal involvement is a question of fact. *Farrell,* 449 F.3d at 484. White has set forth no facts to show any personal involvement by Ercole.

4. *Other arguments.*
 **\*7** Finally, I will address two arguments made in paragraphs 9 and 10 of White's affirmation. Paragraph 9 states:

> 9) Until the Supreme Court decided *Booth,* claimant didn't realize that damage claims had to be exhausted as it didn't appear the grievance process was 'available['] for such purposes indicated in memorandum page 6. *Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

This makes no sense, since *Booth* was decided in 2001 and White's slip and fall was in 2006. Paragraph 10 states:

> 10) Please take further notice that defendant is deemed deliberately indifferent pursuant to 50–h of the General Municipal Law of the State of New York, as the above named defendant, Superintendent Robert Ercole, or his assisting counsel didn't request plaintiff to be orally examined relative to occurrence and extent of injuries, for which this claim was presented against defendant.

Section 50–h is not relevant to this case. First, it applies to claims against a municipality, not a claim against the State or a State official. Second, § 50–h simply gives a municipal defendant a right to examine a claimant under oath; it does not require such an examination. See General Municipal Law 50–h(1):

> Whenever a notice of claim is filed against a city, county, town, village, fire district, ambulance district or school district, the city, county ... or school district shall have the right to demand an examination of the claimant....

*CONCLUSION AND RECOMMENDATION*
I recommend that Judge Batts grant defendant's motion and dismiss the Complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, (i.e. **no later than December 2, 2008**) by filing written objections with the Pro Se Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Deborah A. Batts, U.S.D.J. at Room 2510, 500 Pearl Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2nd Cir.1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(d). Any request for an extension of time must be addressed to Judge Batts.

AFFIRMATION IN OPPOSITION
GARY WHITE, a pro-se plaintiff and inmate housed at Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562, affirms the following statements to be true under penalty of perjury.

1) I am the pro-se plaintiff, petitioning from the county of Ossining, and claimant in the above-named case, and as such am fully familiar with the facts thereof.

2) I make this affirmation in opposition to the defendant's motion to dismiss the above referenced claim.

3) I make this affirmation in opposition, upon information and belief, the sources of which are my experience in bringing this claim, discussions with other pro-se petitioners, and the

memorandum of the law in support of defendant's motion to dismiss.

**\*8** 4) Primarily, plaintiff would oppose defendant's motion as premature and prejudicial, in defendant's argument and standard of review. Defendant directs his first point at plaintiff's failure to bring his grievance to a final (CORC) decision administrative appeal prior to the filing of complaint.

5) The plaintiff did file a grievance with regards to a slipping and falling incident that took place at Green Haven Correctional Facility. It is the plaintiff's view that he received no response. due to corrupt measures taken to discontinue, dispose and to void grievance, and so such grievance could not realistically he brought to a CORC level, for review, and responds thereby denying plaintiff his liberty and constitutional right to due process. Soon thereafter plaintiff was transferred.

6) Health and safety, by merit of equal protection not based on race or gender. His Superintendent, Robert Ercoles, governmental objective to maintain and secure health and safety law standard within the institution in general. At minimum level, Superintendent Robert Ercoles, is in part personally responsible for breach in constitutional health and safety standard. (See U.S. Darren, C.A. 9, 1989; 893 F.3d 208, Constitutional Law 213.1(1), Constitutional Law 213.1(2).

7) To continue the memorandum of law in support of defendant's motion to dismiss is deemed prejudicial to the claimant as its being offered to the court by Superintendent Robert Ercoles, as a pro-se motion, is without merit, as it is obvious. the notarized efforts of two highly trained licensed attorneys, not to mention Attorney General Andrew M. Cuomo and Assistant Attorney General Donald Nowve.

8) Moreover, as such litigation found here, and not only being a question of law, but moral standard. The claimant diligently prays that this Court entitle a more relevant constitutional case law than provided in paragraph 6, to balance the scales of this constitution, measurably, to unfold a more statuary view point of claimant's future medical liberty, dale Court deems it just and proper.

9) Until the Supreme Court decided Booth, claimant didn't realize that damage claims had to be exhausted as it didn't appear the grievance process was "available for such purposes indicated in memorandum page 6. *Booth v. Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

10) Please take further notice that defendant is deemed deliberately indifferent pursuant to 50–h of the General Municipal Law of the State of New York, as the above named defendant, Superintendent Robert Ercole, or his assisting counsel didn't request plaintiff to be orally examined relative to occurrence and extent of injuries, for which this claim was presented against defendant.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 602890

## Footnotes

1   AAG Nowve also served and filed a "Notice Pursuant to Local Civil Rule 56.2 to *Pro Se* Litigant Opposing Motion for Summary Judgment." This notice was substantially the same as the "Local Rule 12.1 Notice to Pro Se Litigant" set forth in our Court's Local Civil Rule 12.1 ("Notice to Pro Se Litigants Opposing Motions to Dismiss or for Judgment on the Pleadings Treated as Motions for Summary Judgment"). Indeed, the Def. Mem., at p. 4, referred to this notice as a "Local Rule 12.1 Notice."

2   The regulations specify time limitations for each step. 7 N.Y.C.R.R. § 701.5. The regulations also provide for extensions and exceptions. 7 N.Y.C.R.R. § 701.6(g). It is undisputed that White took no appeal, and never sought an extension of the deadline to appeal.

3   Even if there is no response to a grievance, DOCS provides that an inmate may appeal to the next level. Thus, to exhaust, White should have appealed even if he got no response to his alleged initial grievance; an appeal was one of the remedies explicitly "available" to him under the New York State Code of Rules and Regulations. 7 N.Y.C.R.R. § 701.6(g)(b)(ii)(2).

4   Several of those cases were argued together and were decided by the Second Circuit on the same day—August 18, 2004. In that group were: *Ortiz v. McBride*, 380 F.3d 649 (2d Cir.2004) (exhausted claims may be allowed to proceed while unexhausted claims are dismissed); *Abney v. New York Dep't of Corr. Servs.*, 380 F.3d 663 (2d Cir.2004) (behavior of defendants may render administrative remedies unavailable); *Hemphill v. State of New York*, 380 F.3d 380 (2d Cir.2004) (threats by prison officials may in some instances be sufficient to estop the defendants from asserting the affirmative

defense of non-exhaustion); and *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004) (plaintiff reasonably believed that DOCS regulations foreclosed recourse to grievance procedure for his particular complaint).

5     See 7 N.Y.C.R.R. § 701.6(h)(2): "An inmate transferred to another facility may continue an appeal of any grievance. If the grievant wishes to appeal, he or she must mail the signed appeal form back to the IGP supervisor at the facility where the grievance was originally filed ...."

6     There are some circumstances in which a supervisory defendant may be found liable under § 1983, but White's allegations do not fit any of the exceptions. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995), citing *Wright,* 21 F.3d at 501 (summarizing exceptions).

---

**End of Document**                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

745 Fed.Appx. 412 (Mem)
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Anthony D. AMAKER, Plaintiff-Appellant,

v.

Mark L. BRADT, Supt., et al., Defendants-Appellees.

16-2829
|
December 19, 2018.

Appeal from a judgment of the United States District Court
for the Western District of New York (Schroeder, M.J.).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

### Attorneys and Law Firms

FOR PLAINTIFF–APPELLANT: Anthony Amaker, pro se,
Brooklyn, NY.

FOR DEFENDANTS–APPELLEES: Jeffrey Lang, Deputy
Solicitor General, Kate H. Nepveu, Assistant Solicitor
General, for Barbara D. Underwood, Attorney General of the
State of New York, Albany, NY.

PRESENT: DENNIS JACOBS, GUIDO CALABRESI,
DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Appellant Anthony Amaker, pro se, sued numerous state
prison officials and corrections officers pursuant to the
Religious Land Use and Institutionalized Persons Act of 2000
("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., and 42 U.S.C. §
1983 for violations of the First and Eighth Amendments. He
alleged that the defendants interfered with the free exercise
of his religion, including access to religious meals, and
that corrections officers engaged in improper or retaliatory
acts. The District Court for the Western District of New
York (Schroeder, M.J.) granted summary judgment to the
defendants, reasoning that Amaker failed to exhaust his
administrative remedies. Amaker appealed. He then moved
for reconsideration, which the magistrate judge denied. He
did not file a new notice of appeal. We assume the parties'
familiarity with the underlying facts, the procedural history
of the case, and the issues on appeal.

We review a grant of summary judgment de novo,
"resolv[ing] all ambiguities and draw[ing] all inferences
against the moving party." Garcia v. Hartford Police Dep't,
706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam). "Summary
judgment is proper only when, construing the evidence in the
light most favorable to the non–movant, **\*413** 'there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.' " Doninger v. Niehoff,
642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)
).

Under the Prison Litigation Reform Act ("PLRA"), "[n]o
action shall be brought with respect to prison conditions
under section 1983 ..., or any other [f]ederal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available
are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires
"proper exhaustion," meaning exhaustion in "compliance
with an agency's deadlines and other critical procedural
rules." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378,
165 L.Ed.2d 368 (2006).

Amaker failed to file grievances for seven of the eight
alleged incidents and failed to exhaust the appeals process for
the remaining incident. One grievance from February 2013
addresses some of the allegations raised in the complaint, but
Amaker did not exhaust his remedies related to this grievance
because he filed the complaint at issue here 11 days after filing
the grievance, before it could be resolved by prison officials.
Exhaustion of a claim after the complaint has already been
filed in federal court does not save the claim from dismissal.
Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001), abrogated in
part on other grounds by Porter v. Nussle, 534 U.S. 516, 122
S.Ct. 983, 152 L.Ed.2d 12 (2002).

Prisoners are exempt from the exhaustion requirement when administrative remedies are unavailable. Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). An administrative procedure is unavailable when (1) " 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates' "; (2) it is " 'so opaque that it becomes, practically speaking, incapable of use' "; or (3) " 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " Williams v. Priatno, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting Ross, 136 S.Ct. at 1859–60).

Amaker argues that administrative remedies were unavailable to him due to his transfer to another prison a month after filing his February 2013 grievance. The defendants argue that Amaker waived this argument by failing to raise it in his motion for summary judgment. Even if Amaker had raised this argument on summary judgment, exhaustion would be required because remedies were available to him after his transfer.

New York's grievance procedure permits an inmate who is transferred to another prison to "continue an appeal of any grievance." 7 N.Y.C.R.R. § 701.6(h)(2). Accordingly, Amaker could (and did) continue to appeal his February 2013 grievance after his transfer. Amaker argues that any remedy would have been moot because he was transferred, but remedies are still available to prisoner who requested and received a prison transfer where "a formal grievance still would have allowed prison officials to reconsider their policies and discipline any officer who had failed to follow existing policies." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 177 (2d Cir. 2006). Therefore, an administrative remedy was available to Amaker, even after his transfer.

To the extent that Amaker also appeals the magistrate judge's denial of reconsideration, we lack jurisdiction to review that order because he never filed a new or amended notice of appeal. A notice of appeal filed prior to an order disposing of a motion listed in Federal Rule of Appellate Procedure 4(a)(4) does not give this Court jurisdiction to review that later order. **\*414** Sorensen v. City of New York, 413 F.3d 292, 295–96 (2d Cir. 2005). An amended notice of appeal is required. Id.; see also Fed. R. App. P. 4(a)(4)(B)(ii).

Amaker filed a notice of appeal after judgment was entered but before the district court decided his motion for reconsideration. Because he did not file an amended notice of appeal, we lack jurisdiction over the order denying reconsideration.

We have considered Amaker's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

### All Citations

745 Fed.Appx. 412 (Mem)

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-00478-LEK-TWD Document 22 Filed 01/30/20 Page 53 of 87

Richardson v. New York State Dept. of Corrections and..., 633 Fed.Appx. 816...

633 Fed.Appx. 816
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals,
Second Circuit.

Roland RICHARDSON, Plaintiff–Appellant,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION
EMPLOYEES, in their individual capacities,
Patrick J. Griffin, Superintendent of Sullivan
Correctional Facility, C.O. R. Lordo, Sergeant
William Haas, Carol Liciago, Facility Nurse—
RN, C.O.D. Lawrence, Lieutenant Sipple, C.O.

Bruno, Visit Room Officer, Defendants–Appellees. [1]

No. 14–3365.
|
Feb. 22, 2016.

Appeal from the United States District Court for the Southern District of New York (Schofield, J.).
**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

**Attorneys and Law Firms**

Ellyde R. Thompson (William B. Adams, on the brief), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for Appellant.

David Lawrence III, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Steven C. Wu, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, for Appellee.

Present: AMALYA L. KEARSE, ROSEMARY S. POOLER and ROBERT D. SACK Circuit Judges.

**SUMMARY ORDER**

Roland Richardson appeals from the August 12, 2014 judgment of the United **\*817** States District Court for the Southern District of New York (Schofield, J.), dismissing his complaint for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. §§ 1997e et seq. On appeal, Richardson argues that the district court erred in granting summary judgment to Defendants because, according to Richardson, there are disputed factual issues concerning whether Richardson's failure to exhaust is excused under the three-part inquiry articulated in Hemphill v. New York, 380 F.3d 680 (2d Cir.2004). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review de novo a district court's ruling on whether a plaintiff has exhausted administrative remedies under the [PLRA]." Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir.2009). In reviewing the district court's grant of summary judgment, we "constru[e] all evidence in the light most favorable to the non-moving party, and affirm[ ] only where 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' " Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir.2015) (citation omitted) (quoting Fed.R.Civ.P. 56(a)).

The PLRA's exhaustion provision provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Supreme Court interpreted this provision to require "proper exhaustion." Id. at 84, 126 S.Ct. 2378. "[A]n untimely or otherwise procedurally defective administrative grievance or appeal" will not suffice. Id. at 83–84, 126 S.Ct. 2378.

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 54 of 87

Richardson v. New York State Dept. of Corrections and..., 633 Fed.Appx. 816...

Here, there is no serious dispute that Richardson failed to properly exhaust his administrative remedies, as he failed to take an administrative appeal to the central office review committee. Richardson argues, however, that his failure to exhaust should be excused under the three-part inquiry articulated in *Hemphill,* 380 F.3d at 686. Under *Hemphill,* to determine whether an inmate's failure to exhaust should be excused, we ask, first, "whether administrative remedies were in fact 'available' to the prisoner." *Id.* Second, we "inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if we "find[ ] that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, [we] should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Id.* (quoting *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004)). While we have questioned the "continued viability" of these exceptions after *Woodford, see Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011), there is no need to address that issue here because Richardson has not demonstrated that his failure to exhaust is justified even under pre-*Woodford* caselaw.

With respect to the first part of the *Hemphill* inquiry, Richardson's failure to properly exhaust is not excused because **\*818** administrative remedies were in fact available to him. Although Richardson claims that he never received the superintendent's decision denying his grievance, this fact is ultimately irrelevant because department of corrections regulations expressly provide that "[i]f the superintendent fails to respond within the required 25 calendar day time limit[,] the grievant may appeal his/her grievance to [the

central office review committee]." N.Y. Comp.Codes R. & Regs. tit. 7, 701.8(g). The fact that Richardson was transferred to a different facility after he filed his grievance does not affect this analysis because Richardson retained the ability to appeal his grievance to the central office review committee even after he was transferred. Nor does the fact that Richardson may have believed an appeal to be futile excuse his failure to exhaust. *See Giano v. Goord,* 250 F.3d 146, 150–51 (2d Cir.2001) ("[T]he alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so.").

Second, Defendants are not estopped from raising Richardson's failure to exhaust. Richardson has never contended that he failed to appeal because of threats from prison officials, and any such contention would be implausible given that Defendants' conduct did not deter Richardson from submitting a grievance to the grievance committee.

Third, there are no "special circumstances" that justify Richardson's failure to exhaust. Richardson argues that special circumstances exist essentially for the same reasons that he argues exhaustion is excused under the first two parts of the *Hemphill* inquiry. For the same reasons that Richardson has not demonstrated that exhaustion is excused under the first two parts of the *Hemphill* inquiry, he has not demonstrated that special circumstances justify his failure to exhaust.

We have considered the remainder of Richardson's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

**All Citations**

633 Fed.Appx. 816

Footnotes

1     The Clerk of Court is directed to amend the official caption to conform with the caption above.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2870300
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Roberto CASTINEIRAS, Plaintiff,
v.
A. HELMS, Defendant.

9:17-CV-1084 (BKS/ATB)
|
Signed 06/06/2019

**Attorneys and Law Firms**

ROBERTO CASTINEIRAS, Plaintiff, pro se

AIMEE COWAN, Asst. Attorney General, for defendants.

**REPORT and RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 *1  This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. Plaintiff has filed this civil rights complaint alleging that on August 21, 2017, at Upstate Correctional Facility, defendant Helms used excessive force against him in the course of extracting plaintiff from his cell. (Complaint ("Compl.") ¶ 6, Facts). Plaintiff originally named two defendants: Corrections Officer ("CO") A. Helms, and "Jane Doe," a nurse on duty at the time of the incident. (Compl. at 1). On December 19, 2017, after initial review of the complaint, Judge Sannes dismissed the complaint against defendant Jane Doe. (Dkt. No. 9).

Presently before the court, is a motion for summary judgment filed by defendant Helms, arguing that plaintiff has failed to exhaust his administrative remedies. In the alternative, defendant argues that plaintiff's Eighth Amendment claim may be dismissed on the merits, and that defendant is entitled to qualified immunity. (Dkt. No. 24). Plaintiff has responded in opposition to the motion, and defendant has filed a reply. (Dkt. Nos. 26, 27). For the following reasons, this court agrees that plaintiff has failed to exhaust his administrative remedies and will recommend that the defendant's motion for summary judgment be granted.

**DISCUSSION**

**I. Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Salahuddin*, 467 F.3d at 272.

**II. Exhaustion of Administrative Remedies**

**1. Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

**\*2** The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19, 127 S.Ct. 910 (citing *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103, 126 S.Ct. 2378.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d).

There is a special section for complaints of "harassment." *Id.* § 701.8. Harassment grievances are defined in another section of the regulations as "those grievances that allege employee misconduct meant to annoy, intimidate, or harm an inmate." *Id.* § 701.2(e). Based on this definition, section 701.8 has been found applicable to claims of excessive force by staff. *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at \*7 n.7 (S.D.N.Y. Sept. 28, 2018) (citing *Torres v. Carry*, 691 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2009)).

Complaints of harassment are handled by an ***expedited*** procedure which provides that such grievances are forwarded directly to the superintendent of the facility, [1] after which the inmate must appeal any negative determination to the CORC by filing a form within seven calendar days of the inmate's receipt of the Superintendent's response. *Id.* §§ 701.8(h) & (i), 701.5. The regulations then provide that "unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of other grievances as set forth in section 701.5 of this Part shall be followed." *Id.* § 701.8(i).

Thus, if a procedure is not described in 701.8, the inmate must refer to section 701.5. [2]

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3** However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 136 S. Ct. at 1857. " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, 656 Fed.Appx. 577, 580 (2d Cir. 2016) (quoting *Ross*, ––– U.S. –––, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still viable. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ––– U.S. –––, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 Fed.Appx. at 580. An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, ––– U.S. –––, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, ––– U.S. –––, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or

"opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860. Thus, if a plaintiff fails to exhaust his administrative remedies, the court must consider whether those remedies were "available" to him.

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a Department of Corrections and Community Services ("DOCCS") regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)).

The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [3] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

## 2. Application

**\*4** In this case, defendant argues that plaintiff failed to exhaust his administrative remedies because he failed to appeal the Superintendent's denial of his grievance to the CORC, and the administrative remedy was "available" to him. (Def.'s Mem. of Law at 3-5) (Dkt. No. 24-9). Defendant also argues that plaintiff failed to specifically identify defendant Helms in his grievance as one of the officers who actually struck plaintiff.[4] (*Id.* at 4). This court need not reach defendant's last argument regarding exhaustion because there are at least two other reasons why plaintiff failed to exhaust his administrative remedies as discussed below, the first of which was not raised by the defendant.

Plaintiff attached his grievance to the complaint in this federal action. (Compl. at CM/ECF p.7). The grievance is dated "9/21/17," and it was received by the Grievance Committee and given Grievance No. UST-61853-17 on "9/22/17." (*Id.*) Plaintiff's federal complaint was also signed "9/21/17," and it was received by the court on "9/28/17." (Compl. at CM/ECF p.6 & Dkt. No. 1 *generally*). If plaintiff signed his administrative grievance and his federal complaint on the same day and mailed the federal complaint to the court, it is impossible that plaintiff could have exhausted his administrative remedies before he filed his federal action. In fact, in the section of the form-complaint which asks the plaintiff "What was the final result of your grievance?", plaintiff's answer was: "[it] is being in investigation under Code 49 harassment/misconduct."[5] (Compl. at CM/ECF p.3).

A civil rights claim must be exhausted by the grievance process, which requires the completion of the three-step process, *before* an action asserting that claim may be filed. *See*, e.g., *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, at \*5 (N.D.N.Y. Nov. 9, 2015), *Rep't Rec., adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015); *See also Klein v. Fischer*, No. 13-CV-0437, 2015 WL 5174031, at \*19 (N.D.N.Y. Sept. 2, 2015) ("a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced.").

The court will also examine whether plaintiff exhausted his administrative remedies *after* filing this action. If plaintiff had done so, the federal complaint would still have to be dismissed, but the plaintiff would have been able to re-file the federal complaint immediately because his remedies would already have been exhausted. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002) (dismissal for failure to

exhaust should be without prejudice to refiling following exhaustion). If plaintiff did not exhaust his remedies during the pendency of this action, the dismissal may still be without prejudice, but plaintiff will have to attempt to exhaust his administrative remedies prior to refiling.

In this case, the parties dispute whether plaintiff completed the exhaustion requirement during the pendency of this action. Defendant Helms argues that plaintiff did not appeal the denial of his grievance to the CORC, and thus never completed the administrative grievance process for his claim at all. (Dkt. Nos. 24-1; 24-9). Plaintiff argues that he did appeal to the CORC, but did not keep copies of any of the relevant documents. The parties agree that plaintiff filed Grievance UST-61853-17 following the alleged August 21, 2017 incident. (Cowen Dec. Ex. A, at 2). Because plaintiff's grievance involved allegations of employee harassment, it was forwarded directly to Upstate's Superintendent for review and response. (Cowen Decl. Ex. A at 7). Plaintiff's grievance was subsequently denied by the Superintendent. (Cowen Dec. Ex. A, at 3). However, the parties disagree as to whether plaintiff appealed the Superintendent's decision to the CORC. (Cowen Dec. Ex. A, at 3; Dkt. No. 24 at 7-9; Dkt. No. 24-5 at 32-33).

**\*5**  Defendant has filed the Declaration of Rachel Seguin, the Assistant Director of the DOCCS IGP and custodian of records maintained by the CORC. (Seguin Decl. ¶¶ 1-2, 7). Assistant Director Seguin reviewed the CORC records, searching for any appeals filed by plaintiff with the CORC and found no grievance appeals by plaintiff. (Seguin Decl. ¶¶ 7-9; Ex. A).

In his deposition, plaintiff claims to have filed his appeal to the CORC and claims that the CORC issued a decision denying his grievance. (Pl.'s Dep. at 32-33). Plaintiff's testimony regarding the appeal was vague. *Id.* Plaintiff has been unable to produce the alleged denial of appeal by the CORC, although he claims to have received such a denial, and has failed to produce any other evidence that the appeal was filed. Plaintiff testified that he did not keep a copy of his appeal or of the CORC's decision. (*Id.* at 32). Although plaintiff responded to the defendant's summary judgment motion, he failed to address the exhaustion issue. (See Dkt. No. 26). [6]  Thus, he has failed to address Assistant Director Seguin's sworn statement that there is no record of plaintiff having filed an appeal with CORC regarding any alleged misconduct by defendant Helms.

Unlike the plaintiff in *Williams*, this plaintiff does not argue that administrative remedies were unavailable to him. Rather, plaintiff claims that he completed all the required steps to exhaust his administrative remedies. He alleges that he did not keep the relevant documents. It is undisputed that plaintiff filed a grievance and received a decision from the Superintendent denying his claim. Because plaintiff has failed to claim that administrative remedies were unavailable to him, any recognized exceptions to the exhaustion of administrative remedies requirement are not relevant to the court's analysis. *See Ross*, 136 S.Ct. at 1853-54.

When a plaintiff fails to exhaust his administrative remedies, the court must dismiss the action without prejudice so that the plaintiff may complete the exhaustion process and re-file his action, unless the time permitted for filing a grievance or appeal has finally expired. *See Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (upholding dismissal of a civil rights action with prejudice where the time permitted for filing a grievance had expired because "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies") (citation omitted).

In this case, the Superintendent's decision was dated October 27, 2017, and the bottom of the document contains an "Appeal Statement," informing the plaintiff that he had "seven (7) calendar days from receipt of this notice to file your appeal.\* Please state why you are appealing this decision to C.O.R.C." (Def.'s Ex. A at 3). *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i). The text associated with the asterisk above states that "\*An exception to this time limit may be requested under Directive #4040, section 701.6(g)." (*Id.*) This document is Form # 2133. (*Id.*) The appeal section of the form is blank, [7] and the regulations specifically provide that "If the grievant or any direct party wishes to appeal to the CORC, he or she *must complete and sign form #2133* and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." 7 N.Y.C.R.R. § 701.5(d)(1)(i) (emphasis added). This section of the regulation further states that "an exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part." *Id.* However, section 701.6(g) provides that "an exception to this time limit may not be granted if the request was made more than 45 days after an alleged occurrence."

**\*6**  Thus, plaintiff may not return to exhaust his administrative remedies as against defendant Helms because,

although he could have requested an exception to the seven-day time limit for appealing to the CORC within 45 days of the occurrence of the incident, that time limit has long since expired, and there appear to be no exceptions to the 45 day limit in the regulations. Because plaintiff may not return to exhaust his administrative remedies as against defendant Helms, I must recommend dismissal with prejudice as against defendant Helms.

In his response to defendant's motion, plaintiff references another investigation surrounding the events of August 21, 2017 and argues that his Eighth Amendment claim should survive summary judgment, even if defendant Helms is granted a "partial" summary judgment on his exhaustion argument. (Dkt. No. 26). According to plaintiff, an investigation conducted by the Office of Special Investigations ("OSI") established that the *nurse* on duty on the day of the incident was guilty of abusive behavior. (Dkt. No. 26).

A copy of the investigative report is attached to defense counsel's affidavit as Exhibit B. The OSI report referenced plaintiff and another inmate, who complained about an unrelated, but similar incident involving the nurse. (Cowan Decl. Ex. B). The OSI investigated the August 21, 2017 incident. (Cowan Dec. Ex. B). The investigation was conducted to look into allegations made by plaintiff, as well as additional allegations by a different inmate at Upstate Correctional Facility, against the nurse on duty during the August 21, 2017 incident (Nurse Marla Travers). (*Id.*) However, even assuming that this investigation sufficed to exhaust plaintiff's claims against Nurse Travers,[8] all claims against "Jane Doe Nurse" were dismissed from this case *sua sponte* by the Judge Sannes. (Dkt. No. 9).[9]

**\*7** In any event, the report states that the investigation was "assigned on September 28, 2017, and Investigator Ryan Graziano signed the completed OSI Report on May 8, 2018, long after plaintiff filed this federal complaint." Thus, notwithstanding the OSI investigation, which focused only on the nurse, plaintiff still failed to exhaust his administrative remedies *prior to* filing this federal complaint. The complaint still remains dismissed without prejudice as to the Jane Doe nurse.

### III. Additional Discovery

### 1. Legal Standards

Pursuant to Fed. R. Civ. P. 56(f), a party opposing a motion for summary judgment based on insufficient discovery must file an affidavit describing: (1) "the nature of the uncompleted discovery;" (2) "how the facts sought are reasonably expected to create a genuine issue of material fact;" (3) "what efforts the affiant has made to obtain those facts" and; (4) "why those efforts were unsuccessful." *Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994);* see also *Brunson v. Jonathan, 677 F. Supp. 2d 640, 641 (W.D.N.Y. 2010).*

### 2. Application

In his response to defendant's motion, plaintiff also argues that he should be allowed to conduct further discovery in this matter in the form of depositions and interrogatories. (Dkt. No. 26). Plaintiff has not met the requirements for additional discovery under Rule 56(f). Plaintiff's response to defendant's motion merely states that discovery "in the form of depositions" and "interrogatories" would be "instrumental" to establish defendant's culpability. Plaintiff's vague and conclusory statement fails to demonstrate how his ability to respond to defendant's motion for summary judgment was impaired by his lack of discovery or what documents he wishes to obtain that would be material to the exhaustion or any substantive issue.

Additionally, in defendant's reply, defense counsel asserts that she complied with the Court's Mandatory Pretrial Discovery order and forwarded the required discovery material to plaintiff. (Dkt. No. 27). Further, defendant notes that plaintiff had six months to conduct discovery after defendant filed his answer to plaintiff's complaint on February 6, 2018 (Dkt. No. 16). The deadline for discovery did not expire until August 7, 2018. (Dkt. No. 17). Moreover, defendant's reply states that there is no indication that plaintiff ever demanded any further discovery or an extension of the discovery deadline. Thus, plaintiff has not met the requirements of Rule 56(f).

### IV. Conclusion

Based upon the complaint itself, the grievance documents, and Assistant Director Seguin's declarations, plaintiff has failed to raise an issue of fact as to whether, prior to the initiation of this action, he properly filed his grievance and/or appealed the grievance against defendant Helms to the CORC as required by the IGP. *See*, e.g., *Ruggiero v. Cty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006)* ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency

addresses the issues on the merits.") (internal quotation marks and emphasis omitted)).

The court also concludes that there are no issues of fact material to whether plaintiff has ever exhausted his administrative remedies with respect to the claim against defendant Helms. No reasonable fact finder could conclude that plaintiff pursued an appeal to the CORC after he filed this action or that he could still pursue such an appeal within the applicable deadlines. Accordingly, I recommend that defendant's motion be granted, and that plaintiff's complaint be dismissed with prejudice based on his failure to exhaust available administrative remedies prior to commencing this action and thereafter, though the expiration of the applicable deadlines to do so.

**\*8  WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 24) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS TO DEFENDANT HELMS**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

### All Citations

Slip Copy, 2019 WL 2870300

---

Footnotes

1   The regulation states that "[a]llegations of employee harassment are **of particular concern to the administrators of department facilities.**" 7 N.Y.C.R.R. § 701.8 (emphasis added).

2   The court also notes that the regulations governing the Inmate Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

3   My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at \*8 (N.D.N.Y. Mar. 10, 2017), (Rep't-Rec.), *adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

4   Defendant argues that the grievance states only that defendant Helms verbally threatened plaintiff after the excessive force incident. (Def.'s Mem. of Law at 4).

5   Exhaustion is an affirmative defense. Thus, even though it clear from the face of the complaint that plaintiff's remedies were not exhausted, in an abundance of caution, the complaint was allowed to proceed past initial review.

6   Plaintiff argues in his Response to defendant's motion for summary judgment that he is entitled to an appointment of counsel. (Dkt. No. 26). Requests of counsel must be made by a Motion for Appointment of Counsel in compliance with the Northern District of New York's local rules. Plaintiff is aware of this requirement as he has previously moved to appoint counsel and the court has denied his motion. (Dkt. Nos. 18, 20).

7   This further supports the defendant's assertion that plaintiff did not, in fact, appeal the Superintendent's denial of his grievance to the CORC.

8   Normally, if plaintiff had filed directly with the Inspector General or OSI, such a complaint would not be sufficient for exhaustion purposes. *Smith v. Kelly*, 985 F. Supp. 2d 275, 285 & n.16 (N.D.N.Y. 2013) ("The Court notes that there is no exhaustion where an inmate complains directly to the Inspector General (i.e., instead of complaining to the superintendent and having the complaint referred to the Inspector General pursuant to 7 N.Y.C.R.R. § 701.8[d] ), the Inspector General renders a finding of unsubstantiation, and the inmate fails to appeal that finding to CORC.") In this case, it is clear from the OSI report that the investigation was requested by the Superintendent on September 19, 2017, but was not finally decided until June 5, 2018. (Cowen Decl. Ex. B at 1, 4). There would have been no need to appeal the OSI finding because it was in plaintiff's favor, and Nurse Travers resigned from her position on April 18, 2018. (Cowen Decl. Ex. B at 3). However, it appears that whatever grievance or complaint prompted the Superintendent to request an OSI investigation, it must have been based on different facts than the grievance that plaintiff attached to his federal complaint because the Superintendent's response to Grievance UST-61853-17 was a *denial* on October 27, 2017, including a statement that "no misconduct by staff was found." (Cowen Decl. Ex. A at CM/ECF p.3). Plaintiff would have been required to appeal that denial in order to exhaust his claims against defendant Helms.

**Castineiras v. Helms, Slip Copy (2019)**

9    Plaintiff had the opportunity to amend his complaint to add the nurse in question as a party. He clearly knew the nurse's name at the time of the OSI investigation, but never filed an amended complaint with the court. The complaint as to Nurse "Doe" was dismissed without prejudice.

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3909694
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dwayne JOY, Plaintiff,

v.

State of NEW YORK; Brian Fischer, individually and
as Commissioner of the New York State Department
of Correctional Services; County of Onondaga; and
Agents of the County of Onondaga, Defendants.

No. 5:09–CV–841 (FJS/ATB).
|
Sept. 30, 2010.

**West Codenotes**

**Recognized as Unconstitutional**
McKinney's Correction Law § 24

**Attorneys and Law Firms**

Carroll & Carroll Lawyers, P.C., Woodruff Lee Carroll, Esq.,
of Counsel, Syracuse, NY, for Plaintiff.

Office of the New York State Attorney General, Kelly L.
Munkwitz, AAG, of Counsel, Albany, NY, for Defendant
New York State and Defendant Brian Fischer.

Onondaga County Law Department, Karen Ann Bleskoski,
Esq., of Counsel, Syracuse, NY.

**MEMORANDUM–DECISION AND ORDER**

SCULLIN, Senior District Judge.

**I. INTRODUCTION**

*1  On July 23, 2009, Plaintiff filed this action under
42 U.S.C. § 1983 alleging violations of his civil rights
resulting from the administrative imposition of post-release
supervision and his subsequent arrest for violating the terms
of his supervision. In addition to these federal Constitutional
claims, Plaintiff alleges violations of section 8–B of the Court
of Claims Act, false imprisonment, *prima facie* tort, and New
York State constitutional violations.

Currently before the Court is Defendant New York State's
and Defendant Brian Fischer's ("State Defendants") motion
to dismiss and Defendant Onondaga County's and Defendants
Agents of Onondaga County's ("County Defendants") motion
for a more definite statement.

**II. BACKGROUND** [1]

Plaintiff was convicted of Burglary and Grand Larceny, for
which he served a determinate New York State prison term
of seven years. At the conclusion of his sentence, Plaintiff
was placed on post-release supervision. The New York State
sentencing court did not impose a period of supervised release
at the time of judgment. Pursuant to New York Penal Law §
70.45(1), the Department of Correctional Services ("DOCS")
"administratively imposed" post-release supervision, which
was mandated as part of every determinate sentence.

While on post-release supervision, Plaintiff violated the
terms of his release *on* three separate occasions and was
subsequently returned to custody. Plaintiff was released from
custody after a successful New York State habeas corpus
proceeding. Plaintiff now brings this civil rights action
seeking recompense for the allegedly illegal imposition of
post-release supervision and the periods of incarceration
resulting from his violations of the terms of his illegally-
imposed post-release supervision.

**III. DISCUSSIONA.  State Defendants' motion to
dismiss** *1. Standard of review for a Rule 12(b)(6) motion*
A motion to dismiss a complaint, brought pursuant to Rule
12(b) (6) of the Federal Rules of Civil Procedure, calls upon
a court to gauge the legal sufficiency of the non-movant's
pleading, using as a backdrop a pleading standard which
is particularly unexacting in its requirements. *See Patane v.
Clark*, 508 F.3d 106, 111–12 (2d Cir.2007). In considering
a pleading's legal sufficiency, a court must accept as true all
well-pleaded facts in the pleading and draw all reasonable
inferences in the pleader's favor. *See ATSI Commc'ns, Inc.
v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation
omitted). This presumption of truth, however, does not extend
to legal conclusions. *See Ashcroft v. Iqbal,* ––– U.S. ––––,
–––– – ––––, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868
(2009). Although a court's review of a motion to dismiss
is generally limited to the facts presented in the pleading,
the court may consider documents that are "integral" to that
pleading, even if they are neither physically attached to, nor
incorporated by reference into, the pleading. *See Mangiafico
v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting
*Chambers v. Time Warner, Inc. .,* 282 F.3d 147, 152–53 (2d
Cir.2002)).

**\*2** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id* . (quoting [*Twombly,* 550 U.S.] at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929).

### 2. Plaintiffs claims against Defendant State of New York and Defendant Fischer in his official capacity

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 90–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). It is well-settled that states are not "persons" under section 1983 and, therefore, that statute does not abrogate a state's Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Moreover, this immunity extends to state agencies and state officials sued in their official capacities. *See Mancuso v. N.Y. State Thruway Auth.,* 86 F.3d 289, 292 (2d Cir.1996) (quotation omitted).

In the present matter, although Plaintiff does not oppose the State Defendants' motion to dismiss Defendant New York State on Eleventh Amendment immunity grounds, he does oppose the dismissal of Defendant Fischer in his official capacity. This argument has no merit because the case law is well-established that Plaintiff cannot sue Defendant Fischer in his official capacity.

Accordingly, the Court grants the State Defendants' motion to dismiss Defendant New York State and Defendant Fischer in his official capacity.

### 3. Plaintiffs section 1983 claims against Defendant Fischer in his individual capacity

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed. 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619. 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

### a. Personal involvement

**\*3** Personal involvement in the alleged constitutional violation is a prerequisite to finding a supervisory official liable under section 1983. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (quotations omitted). A supervisory official is personally involved in the violation of a plaintiff's constitutional rights if he (1) directly participates in the infraction; (2) fails to remedy the wrong after learning of the violation; (3) creates, or allows to continue, an unconstitutional practice; or (4) is grossly negligent in the management of subordinates who caused the violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

Here, Plaintiff has not sufficiently alleged that Defendant Fischer was personally involved in the alleged violation of his rights. The only allegation in Plaintiff's complaint that could be considered to allege Defendant Fischer's personal involvement states that

> [s]aid actions were a policy of the State of New York and the Department of Corrections and said agents of the State of New York:
>
> (a) after learning of the violation through a report or appeal[,] defendants failed to remedy the wrong:

(b) they created the policy or custom under which the unconstitutional practices occurred, or allowed such policy [or] custom to continue;

(c) defendants were grossly negligent in managing subordinates who caused the unlawful condition or event.

(d) opposed the lawful release of the Defendant [sic] until they commenced a habeas corpus proceeding

(e) acted recklessly and intentionally in disregard of the Plaintiffs Constitutional rights in allowing and pursuing the aforesaid as a policy of the State of New York.

*See* Complaint at ¶ 17.

These allegations, although clearly demonstrating Plaintiffs counsel's understanding of the prerequisites to establishing personal involvement, are insufficient to survive a motion to dismiss. In *Iqbal,* the plaintiff's complaint alleged that the defendants " ' knew of, condoned and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race and/or national origin and for no legitimate penological interest.' " *Iqbal,* 129 S.Ct. at 1951 (quotation omitted). Dismissing the complaint. the Supreme Court held that such bare allegations "amount to nothing more than a 'formulaic recitation of the elements[.]' " *Id.*

In the present matter, Plaintiff has not satisfactorily alleged that Defendant Fischer was personally involved in the conduct concerning the revocation of Plaintiff s post-release supervision. First, Plaintiff does not allege that Defendant Fischer knew that Plaintiff had been arrested for a post-release supervision violation. Second, there is no allegation that Defendant Fischer was involved in the parole revocation hearing that ultimately led to Plaintiff's incarceration. Although Plaintiff could argue that the parole board violated his constitutional rights by incarcerating him for violating conditions of his post-release supervision which a sentencing judge did not impose, parole boards are absolutely immune from liability for their decisions. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999) (quotation and other citation omitted). Third, Plaintiff does not allege that DOCS or DOCS personnel had the authority to release Plaintiff once he was incarcerated.

**\*4** As such, the Court grants the State Defendants' motion to dismiss the claims against Defendant Fischer for lack of personal involvement. [2]

### *4. Plaintiffs state-law claims against Defendant Fischer*
In addition to Plaintiffs federal claims, he asserts several New York state-law claims, including (1) unjust conviction and imprisonment pursuant to section 8–b of the New York State Court of Claims Act; (2) false imprisonment; (3) *prima facie* tort; and (4) New York State constitutional violations. *See* Complaint at 3–6. Defendant Fischer claims that section 24 of the New York State Correction Law bars these state-law claims.

Section 24 of the New York State Correction Law provides as follows:

1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y.Corr. Law § 24.

Essentially, this statute precludes inmates from bringing civil suits against "corrections officers in their personal capacities" in state courts. *See Cepeda v. Coughlin,* 128 A.D.2d 995, 997, 513 N.Y.S.2d 528 (3d Dep't 1987). "In applying pendent jurisdiction, federal courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (citations omitted). "If a state would not recognize a plaintiffs right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state'sjurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Id.* (citation omitted).

In 2009, the United States Supreme Court held that section 24, to the extent that it relegates to the New York State Court of Claims civil rights actions brought pursuant to 42 U.S.C.

§ 1983, is inconsistent with the Supremacy Clause and is, therefore, unconstitutional. *See Haywood v. Drown,* ––– U.S. ––––, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009). The *Haywood* Court held that New York State, having created courts of general jurisdiction that routinely hear section 1983 actions against all types of state actors, "is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy." *Id.* at 2117 (footnote omitted).

Although the *Haywood* decision found section 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under section 1983—a federal statute. *See id.* at 2117–18. After *Haywood,* the courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state-law claims against DOCS officials. *See, e.g., Crump v. Ekpe,* No. 9:07–CV–1331, 2010 WL 502762, *18 (N.D.N.Y. Feb. 8, 2010) (quoting *May v. Donneli,* 9:06–cv–437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept.18, 2009) (Sharpe, J. & Treece, M.J.); *see also Tafari v. McCarthy,* No. 9:07–CV–654, ––– F.Supp.2d ––––, 2010 WL 2044705, *51 (N.D.N.Y. May 24, 2010) (citations omitted).

**\*5** Since Plaintiffs allegations against Defendant Fischer clearly fall within the scope of his duties as Commissioner of DOCS, the Court finds that it does not have jurisdiction to hear these pendent state-law claims and, therefore, grants the State Defendants motion to dismiss these claims. *See May,* 2009 WL 3049613, *5 (citations omitted).

**B. County Defendants' motion for a more definite statement**

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, the County Defendants move for a more definite statement of the complaint. *See* Dkt. No. 10–1 at 1. First, the County Defendants claim that it is impossible to determine whether any or all of Plaintiff's claims are time barred because Plaintiff fails to allege any dates on which the alleged violations occurred. *See id.* at 2. Second, they assert that they cannot determine who or what agency allegedly placed Plaintiff on post-release supervision, the term of Plaintiff's sentence upon which he bases his allegations of illegal post-release supervision, and which agency allegedly imprisoned him after he violated the terms of his post-release supervision. *See id* The County Defendants assert that it is impossible to tell what role, if any, they played in the alleged violations. *See id.* In response, Plaintiff does not appear to oppose the County Defendants' motion but asserts that the documents/information are in Defendants' control and that, therefore, he

cannot "particularize accurately without them." *See* Dkt. No. 13 at 1.

It is unclear how Plaintiff can hold the County Defendants liable for any of the alleged constitutional and statutory violations. The only allegation in the complaint that directly relates to the County Defendants states that "[s]aid Onondaga County repeated[ly] placed the plaintiff on post sentence supervision and continued to enforce said post sentence supervision long alter they knew or ought to have known that they were prohibited from doing so under federal law." *See* Complaint at ¶ 18.

Section 70.45 of the New York State Penal Law states that the "board of parole shall establish and impose conditions of post-release supervision" for persons sentenced to determinate prison sentences. *See* N.Y. Penal Law § 70.45(3). Moreover, section 500–c of the New York State Correction Law provides that the county officer responsible for administering the county's correctional facilities "shall not be held personally liable for receiving or detaining any person under and in accordance with a commitment issued by a judicial officer; nor shall he. without lawful authority, let any such person out of jail." N.Y. Corr. Law § 500–c(4). Further, the law states that, "[n]otwithstanding any other provision of law, in the county of Onondaga all of the provisions of this section shall equally apply in any case where the sheriff is holding a person under arrest, for arraignment, prior to commitment, as if such person had been judicially committed to the custody of the sheriff and such person may be held in the Onondaga county jail." *Id.* § at 501–c(6).

**\*6** First, the State, not the County, is responsible for the imposition and enforcement of postrelease supervision. Further, to the extent that Plaintiff may allege that the County Defendants violated his rights by incarcerating him pursuant to a State Parole detainer, section 501–c renders the County immune from any liability. Moreover, Plaintiffs counsel has admitted that he believes that the County is not a proper party to this action. *See* Reply Affidavit of Karen A. Bleskoski sworn to November 4, 2009 ("Bleskoski Aff."), at Exhibit "D." Finally, as in *Iqbal,* Plaintiffs complaint against the County Defendants is nothing more than a mere "formulaic recitation" of the required elements. *See Iqbal,* 129 S.Ct. at 1951. Plaintiff provides nothing more than mere conclusory allegations and, significantly, omits what county agency or individual was involved in his alleged constitutional violations, when they allegedly violated his rights, and how it was that the County Defendants placed

him on post-release supervision when such supervision is statutorily delegated to the State.

Accordingly, the Court denies the County Defendants' motion for a more definite statement as moot and, *sua sponte,* dismisses the action against the County Defendants as merit less.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the State Defendants' motion to dismiss is **GRANTED;** and the Court further

**ORDERS** that all claims against the County Defendants are **DISMISSED** *sua sponte;* and the Court further

**ORDERS** that the County Defendants' motion for a more definite statement is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3909694

---

Footnotes

1  Unless noted otherwise, the parties do not dispute the facts.

2  Alternatively, the Court grants the State Defendants' motion to dismiss the claims against Defendant Fischer on the ground that he is entitled to qualified immunity.

On August 6, 1988, the New York state legislature enacted "Jenna's Law," a statute that ended indeterminate sentences for criminal defendants convicted of violent felonies. *See* N.Y. Penal Law § 70.02. Jenna's Law also imposed a schedule of mandatory terms of post-release parole supervision for certain violent felony offenders. *See id.* at § 70.45(1).

Due to the mandatory nature of the post-release supervision that Jenna's Law created. New York state courts often neglected to declare on the record what the defendant's post-release supervision obligations would be. In such cases, DOCS would administratively impose the postrelease supervision on the defendant so that his sentence would comply with the law. as was the case here.

For several years, New York state courts routinely upheld the administrative imposition of this mandatory post-release supervision. *See, e.g., Deal v. Goord,* 8 A.D.3d 769, 769–70, 778 N.Y.S.2d 319 (3d Dep't 2004) (citing *People v. Lindsey,* 302 A.D.2d 128, 129, 755 N.Y.S.2d 118 (3d Dep't 2003), *lv. denied* 100 N.Y.2d 583, 764 N.Y.S.2d 394, 796 N.E.2d 486 (2003)) (other citations omitted). On June 9, 2006, however, the Second Circuit held that DOCS' administrative imposition of post-release supervision violated the Constitution's Due Process Clause. *See Earley v. Murray,* 451 F.3d 71 (2d Cir.2006), *reh'g denied,* 462 F.3d 147 (2d Cir.2006), *cert. denied,* 551 U.S. 1159, 127 S.Ct. 3014, 168 L.Ed.2d 752 (2007).

After the Second Circuit's decision in *Earley,* the New York state courts continued to rule that post-release supervision was an automatic part of a sentence subject to Jenna's Law and noted that, because DOCS was "only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute, they have not performed any judicial function. making prohibition an unavailable remedy." *Garner v. N.Y.S. Dep't of. Corr. Servs.,* 39 A.D.3d 1019, 1019 (3d Dep't 2007) (citation omitted); *see also People v. Thomas,* 35 A.D.3d 192, 193–94, 826 N.Y.S.2d 36 (1st Dep't 2006) (citation omitted). Even though *Earley* was decided on June 9, 2006. it was not until April 29, 2008, that the New York State Court of Appeals held that the New York Criminal Procedure Law did not permit the administrative imposition of post-release supervision. *See Garner v. N.Y.S. Dep't of Corr. Servs.,* 10 N.Y.3d 358, 363, 859 N.Y.S.2d 590, 889 N.E.2d 467 (2008); *People v. Sparber,* 10 N.Y.3d 457, 460–61, 859 N.Y.S.2d 582, 889 N.E.2d 459 (2008) (citation omitted). After the New York Court of Appeals' decisions, on June 30, 2008, the New York legislature passed N.Y. Corrections Law § 601–d, creating a procedure by which individuals who had post-release supervision administratively imposed could be re-sentenced so that their sentences would comply with Jenna's Law. This law, for the first time, imposed on Defendant Fischer and DOCS an obligation to, and provided a means by which DOCS could, petition the state sentencing court to correct an improperly imposed sentence to include post-release supervision. *See* N.Y. Corr. Law § 601–d.

Considering the state courts' confusion over the law, it cannot be said that, during the relevant time period, any right that Plaintiff may have had was a clearly established one of which a reasonable person would have known. Plaintiff was released from prison and placed on his administratively-imposed post-release supervision on June 28, 2006. Thereafter. Plaintiff was released from his term of incarceration from his post-release supervision violations on May 27, 2008. *See* Affidavit of Woodruff Lee Carroll dated November 2, 2008 ("Carroll Aff."), at ¶ 5. As the case law makes clear, the implications of *Earley* and the impact that it would have on prisoners in Plaintiff's position was a source of great confusion. As such, Defendant Fischer is entitled to qualified immunity. *See Rodriguez v. Fischer,* No. 08–CV–4662. 2010 WL 438421, *6 (E.D.N.Y. Feb.3, 2010) (applying qualified immunity defense to DOCS officers who incarcerated the plaintiff for violations of an administratively-imposed post-release supervision because New York courts continued to uphold the practice even after *Earley* was decided, allowing the defendants to rely on a presumptively-valid state statute (citations omitted)); *see also Ruffins v. Dep't of Corr. Servs.,* 701 F.Supp.2d 385, 408 (E.D.N.Y.2010) (same).

---

**End of Document**                                      © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 68 of 87

2015 WL 4126326
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Douglas AMES, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; Correction Officer James Stevens;
Correction Officer David Smith; Correction
Officer Thomas Schunk; Correction Officer
Patrick Mcintyre; Correction Officer Thomas
M. Hobart; Correction Officer Shane King;
Lieutenant Christopher Mcdermott; Sergeant
Paul Morris; and Correction Officers John
Does in their individual capacities, Defendants.

No. 9:12–cv–01487 (MAD/RFT).
|
Signed March 23, 2015.
|
Filed March 24, 2015.

**Attorneys and Law Firms**

Orrick, Herrington & Sutcliffe LLP, J. Peter Coll, Jr., Esq., Silvia A. Babikian, Esq., of Counsel, New York, NY, for Plaintiff.

Office of the New York, State Attorney General, Rachel M. Kish, AAG, Adrienne J. Kerwin, AAG, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 *1  Plaintiff commenced this civil rights action in September 2012, alleging that his constitutional rights were violated while he was incarcerated at Coxsackie Correctional Facility. See Dkt. Nos. 1, 26. Plaintiff alleges six claims, including that: (1) Defendant Correction Officers Stevens, Smith, Schunk, McIntyre, Hobart, and King together with Defendant Lieutenant McDermott and Defendant Sergeant Morris (collectively "Defendant Correction Officers") retaliated against him for exercising his First Amendment rights;

(2) Defendants Smith, King, and Morris violated his Eighth Amendment through the use of excessive force; (3) Defendant Correction Officers conspired to deprive Plaintiff of the equal protection of the laws; (4) Defendant New York State Department of Corrections and Community Supervision ("DOCCS") should reverse disciplinary action against Plaintiff and expunge his records; (5) Defendants Smith, King, and Morris committed an assault and battery under state common law; and (6) Defendant Correction Officers violated the New York Constitution. See Dkt. No. 26. On May 1, 2014, Defendants filed a motion to dismiss and a motion for summary judgment pursuant to Rules 12(b) (6) and Rule 56(a) of the Federal Rule of Civil Procedure, respectively. See Dkt. No. 48 at 1.

**II. BACKGROUND**

Plaintiff was an inmate at Coxsackie Correctional Facility ("Coxsackie") from November 2007 through June 2010. See Dkt. No. 48–4 at 47. [1]  During that time, he worked at the Coxsackie law library as an administrative clerk from March 31, 2008 through June 8, 2008, a paralegal assistant from June 9, 2008 through March 22, 2009, a clerk typist from July 27, 2009 through December 27, 2009, and a paralegal assistant from February 1, 2010 through June 13, 2010. See Dkt. No. 48–4 at 49–50. Plaintiff left his law library positions twice for disciplinary reasons. See id. Plaintiff received the following misbehavior reports while at Coxsackie: (1) six misbehavior reports issued by Defendant Stevens dated July 27, 2009, August 18, 2009, August 20, 2009, October 26, 2009, November 30, 2009, and December 8, 2009 (see Dkt. Nos. 48–4 at 71, 95, 100, 111; 48–5 at ¶ 7); (2) two misbehavior reports issued by Defendant McIntyre, both dated August 14, 2009 (see Dkt. No. 48–4 at 76, 83); (3) one misbehavior report issued by Defendant Hobart dated August 25, 2009 (see Dkt. No. 48–5 at ¶ 7); (4) one misbehavior report issued by Defendant Schunk dated December 15, 2009 (see Dkt. No. 48–4 at 117); and (5) one misbehavior report issued by Defendant Smith dated May 17, 2010 (see id. at 124).

Plaintiff filed an inmate grievance complaint dated December 8, 2009 related to retaliatory misbehavior reports. see id. at 20. This grievance complaint was denied at the highest level of administrative review on March 3, 2010. see id. at 19. Plaintiff filed an inmate grievance complaint dated December 17, 2009 related to false misbehavior reports by Defendant Schunk, and it was also denied at the highest level of administrative review on February 17, 2010. see id. at 23–25. Plaintiff filed an inmate grievance complaint on January 3, 2010 related to

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 69 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

Defendant McDermott's comments during Plaintiff's Tier II hearing on December 22, 2009. *see id.* at 9. This complaint was denied on appeal to the highest level of administrative review on March 10, 2010. *see id.* at 11. Plaintiff filed an inmate grievance complaint on May 24, 2010 related to the alleged excessive use of force by Defendant Smith, and the complaint was denied at the highest level of administrative appeal on September 8, 2010. *See* Dkt. No. 52–30 at 2.

**\*2** Currently before the Court is Defendants' motion to dismiss and motion for summary judgment to dismiss this action in its entirety against all Defendants.

### III. DISCUSSIONA. Standard

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim on which relief can be granted. In order to state a sufficient claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft* 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the undisputed facts warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (citations omitted). "The moving party bears the burden of showing that he or she is entitled to summary judgment." *Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2004); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must identify those portions of the record which demonstrates that there is no genuine issue of material fact. *See Celotex,* 477 U.S. at 323. When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Chambers,* 43 F.3d at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex,* 477 U.S. at 324 (citing Fed.R.Civ.P. 56(c), (e)). In assessing whether any such issues of material fact exist within the record, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers,* 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (other citations omitted).

**\*3** To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968); *see Baum v. N. Ducthess Hosp.,* 764 F.Supp.2d 410, 416 (N.D.N.Y.2011).

### C. Analysis1. First Amendment Retaliation

Plaintiff claims that Defendant Correction Officers unlawfully retaliated against him for exercising his constitutional rights to file grievances, provide legal assistance to inmates, and write complaints reporting abuse of other inmates and, therefore, violated his First Amendment rights. *See* Dkt. No. 26 at ¶¶ 85–89. Plaintiff claims that Defendant Correction Officers retaliated by filing false misbehavior reports, useing excessive force, and making verbal threats. *See* Dkt. No. 26 at ¶¶ 38, 45, 47, 49–51, 53–56, 58, 60–61, 66–67, 74. Defendants move to dismiss these claims under Rule 12(b)(6) and, ostensibly, under Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 48. Defendants make three arguments that, as a matter of law, Plaintiff's claims of retaliation fail. Defendants argue

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 70 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

that there is not a constitutional right to be free from false misbehavior reports, that the legal assistance provided by Plaintiff to other inmates is not protected speech, and that it is speculative that the misbehavior reports are causally connected to Plaintiff's protected speech or conduct. *See* Dkt. No. 48–1 at 8.

Initially, the Court notes that prisoner claims for First Amendment retaliation are approached "with skepticism and particular care" because the claims are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (acknowledging that "virtually any adverse action taken against a prisoner by a prison official ... can be characterized as a constitutionally proscribed retaliatory act"). To state a claim of First Amendment retaliation, the plaintiff must show he engaged in constitutionally protected speech or conduct, that the defendant took an adverse action against him, and that there is a causal connection between the two. *See Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004); *Dawes,* 239 F.3d at 492.

Not every act engaged in by a plaintiff qualifies as constitutionally-protected speech or conduct. *See Coleman v. Beale,* 636 F.Supp.2d 207, 211 (W.D.N.Y.2009) (stating that general advice to another inmate on the mechanics of an appeal was not constitutionally protected conduct); *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 215 (N.D.N.Y.2008). However, the filing of a grievance by a prisoner against correction officers is conduct and speech that is constitutionally "protected by the First Amendment's guarantee of the rights to free speech and to petition the government for a redress of grievances." *Coleman,* 636 F.Supp.2d at 211; *see Davis v. Goord,* 320 F.3d 346, 352–53 (2d Cir.2003). Also, a prisoner's statement that he or she intends to file a grievance is constitutionally protected speech. *See Coleman,* 636 F.Supp.2d at 211.

**\*4** Although Defendants conclude that providing legal assistance to other inmates is not constitutionally protected conduct, this Court has held otherwise. *See Anderson v. Lapolt,* No. 9:07–CV–1184, 2009 WL 3232418, \*7–8 (N.D.N.Y. Oct.1, 2009) (finding that the plaintiff stated a facially valid retaliation claim where the protected speech alleged was the authorized legal assistance provided to other inmates); *Auleta v. LaFrance,* 233 F.Supp.2d 396, 399–402 (N.D.N.Y.2002) (stating that the plaintiff had standing to argue that retaliatory acts taken against him were unconstitutional even though the acts interfered with another

inmate's right to petition the courts). Accordingly, Plaintiff's retaliation claim based upon his protected act of providing legal assistance to other inmates is not legally insufficient.

The adverse action taken in retaliation against Plaintiff must be the type of action "that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis,* 320 F.3d at 353 (quoting *Dawes,* 239 F.3d at 493); *see also Gill,* 389 F.3d at 381 (clarifying that adverse action in the prison context is defined objectively). Defendants argue that, as a matter of law, Plaintiff does not have a constitutional right to be free from false misbehavior reports. *See* Dkt. No. 48–1 at 6. While Defendants are generally correct on the face of this statement, it is not determinative in the context of a First Amendment retaliation claim. *See Lee v. O'Harer,* No. 9:13–CV–1022, 2014 WL 7343997, \*7 (N.D.N.Y. Dec.23, 2014) (stating that "[a]ny adverse action taken by [the] defendant in retaliation for the exercise of a constitutional right ... states a viable constitutional claim"). There is no requirement that the retaliatory act rise to the level of a constitutional violation and, therefore, Defendants' contention that Plaintiff does not have a constitutional right to be free from false misbehavior reports does not have any bearing on whether Defendants unlawfully retaliated against Plaintiff. *See Davis,* 320 F.3d at 352; *Dawes,* 239 F.3d at 491 (citing *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988)).

The causal nexus between the protected speech or conduct and the retaliation must be specifically pleaded. *See Dolan v. Connolly,* No. 13 Civ. 5726, 2014 WL 1876524, \*10 (S.D.N.Y. May 8, 2014), report and recommendation adopted by 2014 WL 3057973 (S.D.N.Y. June 27, 2014). The "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.' " *See Davis,* 320 F.3d at 354 (quoting *Dawes,* 239 F.3d at 492). Several factors have previously been used to evaluate whether a causal nexus has been sufficiently pleaded, which include the following: " '(1) the temporal proximity between the plaintiff's protected activity and the defendant's adverse action, (2) the prior disciplinary records of the inmate, (3) the outcomes of any hearings regarding the allegedly retaliatory charges, and (4) any statements defendant makes concerning his motive.' " *Dolan,* 2014 WL 1876524, at \*10 (quoting *Davidson v. Bartholome,* 460 F.Supp.2d 436, 444 (S.D.N.Y.2006); *see also Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995).

Case 9:19-cv-00478-LEK-TWD   Document 22   Filed 01/30/20   Page 71 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

**\*5** Here, Plaintiff has failed as a matter of law to sufficiently state First Amendment retaliation claims against Defendants Smith, King, and Morris. Plaintiff contends that, on May 17, 2010, Defendant Smith used excessive force against him and that Defendants King and Morris were present. *See* Dkt. No. 26 at ¶¶ 71–74. Plaintiff alleges "[u]pon information and belief, C.O. Smith was acting on behalf of C.O. Stevens, and also to prevent [Plaintiff] from engaging in the activities of a jailhouse lawyer" by using excessive force and filing a misbehavior report on May 17, 2010. *See id.* Plaintiff does not make any similar allegations of retaliation by Defendants King or Morris and, therefore, failed to state claims against them. *See id.* Plaintiff's allegation that Defendant King said, "If it was me I would have beat you up worse," as he was escorting Plaintiff to the hospital is also insufficient to state a valid retaliation claim. *See Islam v. Goord,* No. 05 Civ. 7502, 2006 WL 2819651, *5 (S.D.N.Y. Sept.29, 2006) (stating that verbal threats are not sufficient retaliatory acts); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005). The Court dismisses the claims of First Amendment retaliation against Defendants King and Morris.

Plaintiff's claim that, upon his belief, Defendant Smith was acting on behalf of Defendant Stevens is entirely speculative, and Plaintiff does not offer any further support for this belief. *See* Dkt. No. 26 at ¶ 74. There are no allegations that Defendants Smith and Stevens had communicated about Plaintiff prior to May 17, 2010. Further, Plaintiff did not specify a protected act that Defendant Smith was retaliating against. *See Dolan,* 2014 WL 1876524, at *9. The Court finds that the facts, as alleged, are insufficient to establish an inference that Defendant Smith acted in retaliation of Plaintiff's grievances against Defendant Stevens.

Plaintiff also claims that, upon information and belief, Defendant McIntyre retaliated against Plaintiff for filing grievances against Defendant Stevens by filing false misbehavior reports against him twice on August 14, 2009. *See* Dkt. No 26 at ¶ 47. Plaintiff does not provide any further facts about Defendant McIntyre's motivation or knowledge related to Defendant Stevens. *see id.* Plaintiff also does not reference any dates of protected speech or conduct related to Defendant McIntyre's alleged retaliation. *see id.* Likewise, Plaintiff claims that Defendant Hobart issued a misconduct report on August 25, 2009. *see id.* at ¶ 53. Allegedly, Defendant Hobart said to Plaintiff, "Officer Stevens told me to write you up, so I did." *see id.* No further context for this statement was provided by Plaintiff. Even assuming that Defendant Hobart made that statement, the Court finds

it does not establish a causal connection where Plaintiff has not identified any specific grievance or other speech that Defendant McIntyre was retaliating against. *See Dolan,* 2014 WL 1876524, at *9. The Court finds that the amended complaint against Defendants McIntyre and Hobart failed to plead a specific protected act or any causal connections between Plaintiff's protected speech or conduct and the filing of misconduct reports by Defendants McIntyre and Hobart.

**\*6** Although it is not raised in Defendants' motion, the Court *sua sponte* finds, in the alternative, that Plaintiff's claims against Defendants McIntyre and Hobart are barred by the three-year statute of limitations applicable to First Amendment retaliation actions under Section 1983 in New York. *See Smith v. New York City Dep't of Educ.,* 524 Fed. Appx. 730, 732 (2d Cir.2013). The dates of the alleged retaliatory conduct, August 14, 2009 and August 25, 2009, and the dates of the hearings, August 24, 2009 and September 9, 2009, are all outside of three years from September 28, 2012, the commencement of this action (*see* Dkt. No. 1). *See Smith,* 524 Fed. Appx. at 732. Defendants McIntyre and Hobart each filed one misconduct report against Plaintiff. *See* Dkt. No. 26 at ¶¶ 47, 53. Each of these retaliatory acts, as alleged, were discrete actions, and there is no basis to apply the continuing violation doctrine. *See Smith,* 524 Fed. Appx. at 732.

As for Plaintiff's First Amendment retaliation claims against Defendants Schunk and McDermott, the Court finds that the amended complaint plausibly alleges these claims. Plaintiff alleges that, on December 15, 2009, inmate Dashawn Andrews was being beaten in an adjacent cell. *See* Dkt. No. 26 at ¶ 59. When Defendant Schunk walked past, Plaintiff told him that he intended to write a complaint to the inspector general about the abuse. *See id.* A statement of intention to write a complaint has been found to be protected speech. *See Coleman,* 636 F.Supp.2d at 211 (stating that the intention to file a grievance was constitutionally protected speech). Plaintiff contends that in retaliation for stating his intention to complain to the inspector general about inmate abuse, Defendant Schunk filed a misbehavior report against him. *see id.* at ¶ 60. On December 17, 2009, Defendant McDermott presided over Plaintiff's Tier II hearing. *See id.* Plaintiff was sentenced to thirty days of keeplock. *See id.* Plaintiff asked Defendant McDermott why he was being punished based upon false reports, and Defendant McDermott allegedly replied, "That's what happens when you talk to I.G. about my officers." *see id.* at ¶ 61. Contrary to the Defendants' contentions, the Court finds that Plaintiff has alleged facts

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 72 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

to identify specific protected speech, retaliatory actions of Defendants Schunk and McDermott, and a causal connection between Plaintiff's speech and those Defendants' actions. Further, Defendants are not entitled to summary judgment because material questions of fact exist as to Plaintiff's retaliation claim against Defendants Schunk and McDermott.

Plaintiff claims that Defendant Stevens was the main actor in retaliating against him. *See* Dkt. No. 26 at ¶ 3. Plaintiff claims that Defendant Stevens retaliated against him for filing grievances on his own behalf and the legal assistance he provided to other inmates. *see id.* As addressed above, Defendants unsuccessfully argue on their motion to dismiss that Plaintiff does not have a constitutional right to be free from false misbehavior reports and that providing legal assistance to other inmates is not constitutionally protected speech as a matter of law. Defendants' final argument as to Defendant Stevens is that the causal connection between Defendant Stevens misbehavior reports and Plaintiff's protected conduct is speculative. *See* Dkt. No. 48–1 at 6.

 **\*7** While Plaintiff is correct that the filing of grievances on his own behalf is a protected First Amendment right (*see Davis,* 320 F.3d at 352–353), Plaintiff has failed to state or identify any specific grievances that he has filed on his own behalf prior to the start of Defendant Stevens retaliatory conduct on July 27, 2009 through December 8, 2009. Plaintiff briefly references that Defendant Stevens was the subject of an earlier grievance filed by Plaintiff but no other facts about dates or allegations of the grievance are alleged. *See* Dkt. No. 26 at ¶¶ 3, 36. There are also no other references to any grievances filed by Plaintiff in the record until his grievance dated December 8, 2009, which is after Defendant Stevens alleged retaliatory conduct had ceased. *See* Dkt. No. 26 at ¶ 79. The Court finds that Plaintiff has not identified a grievance on his own behalf that could have caused Defendant Stevens' retaliatory conduct. The causal connection between the filing of an unidentified and undated grievance to six false misbehavior reports is too speculative to plausibly state a retaliation claim. *See Lee,* 2014 WL 7343997, at *9 (stating that "[i]t is impossible for [the defendant] to retaliate for a grievance that would not be filed for six days"); *Dolan,* 2014 WL 1876524, at *9. That part of Plaintiff's retaliation claim against Defendant Stevens is dismissed.

However, Plaintiff claims that he assisted another inmate with filing a grievance against Defendant Stevens in the Summer of 2009, which was an instigating factor for Defendant

Stevens to file six misconduct reports against Plaintiff between July 27, 2009 and December 8, 2009. *See* Dkt. No. 26 at ¶¶ 3, 33, 36, 43, 58. Plaintiff also claims that Defendant Stevens interfered with the legal assistance that he was providing to another inmate in the law library on August 20, 2009. *See* Dkt. No. 26 at ¶ 51. This providing legal assistance also contributed to Defendant Stevens' retaliatory conduct, according to the amended complaint. *See* Dkt. No. 26 at ¶¶ 51, 54–58. The Court finds that Plaintiff has plausibly alleged Defendant Stevens retaliated against him for providing legal assistance to other inmates. Defendants do not make any argument that summary judgment should be granted to Defendant Stevens and, thus, Defendants failed to meet their burden in establishing that there are no material questions of fact that relate to Defendant Stevens' alleged retaliation. *See* Fed. R. Civ. P 56(a), (c).

### 2. Eighth Amendment

Defendants seek to have Plaintiff's claim for violation of the Eighth Amendment dismissed because Plaintiff failed to exhaust his claim as required by the Prison Litigation Reform Act of 1996 ("PLRA"). *See* Dkt. No. 48–1 at 12–15. The PLRA "requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action." *Brooks v. Rock,* No. 9:11–cv–1171, 2014 WL 1292232, *8 (N.D.N.Y. Mar.28, 2014). Grievance No. CX–15885–110 for an assault that allegedly took place on May 17, 2010 was denied by the Inmate Grievance Program Central Office Review Committee ("CORC") on September 8, 2010. *See* Dkt. No. 52–30 at 2. This final determination by the CORC on Plaintiff's grievance was the final step in the exhaustion process. *See* Dkt. No. 52–20 at 14. Moreover, as it relates to the exhaustion of administrative remedies, it is of no consequence that Defendants King and Morris were not specifically named within Plaintiff's grievance. *See Varela v. Demmon,* 491 F.Supp.2d 442, 449 (S.D.N.Y.2007). The Court finds that Plaintiff has exhausted his administrative remedies under the PRLA.

 **\*8** Substantively, Plaintiff contends that Defendants Smith, King and Morris used excessive force against him in violation of the Eighth Amendment. *See* Dkt. No. 26 at ¶¶ 90–94. The Eighth Amendment prohibits cruel and unusual punishment. *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). As applied to claims of excessive force, the Supreme Court has stated that the appropriate inquiry is "whether the measure taken inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citing *Johnson v. Glick,*

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 73 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

481 F.2d 1028, 1033 (2d Cir.1973)); *see Hudson,* 503 U.S. at 5. To state a claim for use of excessive force, Plaintiff must establish both an objective and a subjective component as set forth by the courts. *See Hudson,* 503 U.S. at 8; *Brooks,* 2014 WL 1292232, at *13.

The subjective component evaluates the wantonness of the force used and "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' " *Whitley,* 475 U.S. at 321 (quoting *Johnson,* 481 F.2d at 1033); *see Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). There are several factors that may be consider when evaluating the nature of a correction officer's use of force, including (1) the need for the application of force, (2) the relationship between that need and the force actually used, (3) the severity of the injury sustained, (4) the threat that could reasonably be perceived by the correction officer, and (5) if there was any effort to temper the severity of the force use. *See Hudson,* 503 U.S. at 7; *Whitley,* 475 U.S. at 321. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321.

The objective component asks "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation ." *Hudson,* 503 U.S. at 8 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To determine whether an action is harmful enough to violate the Eighth Amendment, we must look to the " 'contemporary standards of decency.' " *Hudson,* 503 U.S. at 8 (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.' " *Hudson,* 503 U.S. at 9 (quoting *Wilson,* 501 U.S. at 298). "[T]he Eighth Amendment [ ] ... does not extend to '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' " *See Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir.2000) (quoting *Hudson,* 503 U.S. at 10 (internal quotations and citations omitted).

 **\*9** Weighing all facts and drawing all inferences in Plaintiff's favor, the record supports a reliable inference of wantonness and unnecessary infliction of pain. According to Plaintiff's testimony, Defendant Smith came to retrieve and escort Plaintiff to the deputy superintendent on May 17, 2010. *See*

Dkt. Nos. 26; 48–3 at 101. Plaintiff and another inmate were being escorted together to a common area to be frisked for weapons. *See* Dkt. No. 48–3 at 103. Correction Officer Bogardis, Defendant King, Defendant Morris, and two other unknown officers were present in this common area, although these individuals were all seated around a desk and not in the immediate area in front of or behind Plaintiff. *see id.* at 104, 108, 112. Defendant Smith put his hand in front of Plaintiff's face and said, "Next time you hurry up. You too slow." *see id.* at 104. In a loud voice, Plaintiff told Defendant Smith, "Get your hand out of my face," and Defendant Smith replied, "You lucky that's all I'm doing." *see id.* at 105. As described by Plaintiff, either simultaneous with or shortly after his statement to Defendant Smith, Plaintiff raised both hands, turned, and took two steps away from him. *see id.* at 104, 106. Defendant Smith then landed one, closed-fisted punch to the side of Plaintiff's head and took Plaintiff face down to the ground in a bear hug. *see id.* at 104, 107, 110.

While holding Plaintiff down flat with his knee on the small of the back, Defendant Smith was given handcuffs from Defendant Morris. *see id.* at 110. Plaintiff's arms were pulled behind him and handcuffed by Defendant Smith. *see id.* After Plaintiff was handcuffed, Defendant Smith said, "Take that to federal court." *see id.* Plaintiff did not sustain any further physical assault or battery. *see id.* at 110–11. No other correction officer moved or caused injury to him throughout the incident. *See id.* Plaintiff described that the force of the hit was painful when it occurred, but he did not have any residual pain, bruising, or swelling. *See id.* at 117. Pursuant to protocol, Plaintiff was brought for a medical evaluation because there was force used against an inmate, but he told the nurse that he was not injured and did not require any medical treatment. *See id.* at 116–17. Defendant Smith testified that Plaintiff abruptly swung his left hand and arm toward Defendant Smith at head level, and, in reaction, Defendant Smith moved his head backwards and struck Plaintiff. *See* Dkt. No. 52–23 at 8. The movement of Plaintiff's hand was fast enough that Defendant Smith perceived that Plaintiff was attempting to strike him. *See id.* at 9.

After an examination of the relevant factors to assess if Defendant Smith acted with malicious and sadistic intent to harm Plaintiff, the Court finds that there is a material question of fact to be determined by a jury. The event described by Plaintiff supports a reasonable inference that Defendant Smith acted with sadistic and malicious intent, and, accordingly, Defendants' motion for summary judgment

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 74 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

dismissing this claim must be denied. *See Whitley,* 475 U.S. at 322 (stating that the evidence must "support a reliable inference of wantonness in the infliction of pain" to go to a jury); *Brooks,* 2014 WL 1292232, at *14.

**\*10** Additionally, Defendants argue that Plaintiff has not alleged Defendant King used any force against Plaintiff. The Court agrees with Defendants. Plaintiff does not allege any force-related actions by Defendant King in his amended complaint or during his deposition testimony describing the events on May 17, 2010. *See* Dkt. Nos. 26; 48–3. According to Plaintiff's alleged facts, Defendant King escorted Plaintiff for medical evaluation and said, "Yeah, if it was me, I would have beat you up worse." *See* Dkt. Nos. 26; 48–3 at 112. Actions brought under Section 1983 require personal involvement of the defendant "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights ." *Blyden,* 186 F.3d at 264. Plaintiff does not allege that Defendant King ever personally used force against Plaintiff and, therefore, the Court finds that Plaintiff fails to state a cause of action against Defendant King for excessive use of force in violation of the Eighth Amendment. *See Montero v. Crusie,* 153 F.Supp.2d 368, 37576 (S.D.N.Y.2001).

Defendants argue that Plaintiff has also failed to allege facts that Defendant Morris used any force against Plaintiff on May 17, 2010. *See* Dkt. No. 48–1. In opposition, Plaintiff claims that Defendant Morris' personal involvement related to his role as a supervisor. *See* Dkt. No. 52. Defendant Morris was a sergeant in May 2010 and was the direct supervisor of Defendants Smith and King on May 17, 2010. *See* Dkt. No. 52–25 at 22–24. Defendant Morris was on the other side of the room (approximately twenty by thirty feet in size) from where Defendant Smith used force against Plaintiff. *see id.* at 54, 57, 76. Defendant Morris does not have any specific recollection of the use of force. *see id.* at 50–64.

A supervisory official may not be held liable solely on the ground that they held a position of authority. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citation omitted). However, supervisory personnel may satisfy the personal involvement requirement if:

> (1) The defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon,* 58 F.3d at 873.

Personal involvement is a question of fact and must be satisfied as to each individual defendant. *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (citation omitted). "A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Rivera v. Fischer,* 655 F.Supp.2d 235, 237 (W.D.N.Y.2009). By Plaintiff's factual account, Defendant Morris did not have any direct involvement in the actual punch by Defendant Smith, (*see* Dkt. No. 48–3 at 110) and Plaintiff does not direct the Court to any support in the record that there was a custom or policy of practice created by Defendant Morris or gross negligence in his management of Defendant Smith that was related to the use of force. Plaintiff does not allege that Defendant Morris gave authorization for Defendant Smith's use of force. *See Johnson,* 481 F.2d at 1034. Further, a single incident of excessive force is not the type of wrong that could be remedied by Defendant Morris after a report. *See, e.g., United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 588–89 (2d Cir.1974) (finding a question of fact as to whether the defendant should have known the plaintiff was unlawfully confined and failed to act). Therefore, the Court also finds that Plaintiff failed to state a claim of excessive force against Defendant Morris, directly or as a supervisor of Defendant Smith.

### 3. *42 U.S.C. § 1985(3)*

**\*11** Plaintiff's third cause of action is against Defendant Correction Officers for a conspiracy to deprive Plaintiff of the equal protection of the laws under 42 U.S.C. § 1985(3).

To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: '(1) a conspiracy; (2)

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 75 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'

*Dolan,* 2014 WL 1876524, at \*12 (quoting *United Bhd. of Carpenters and Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)); *see Vega v. Artus,* 610 F.Supp.2d 185, 204 (N.D.N.Y.2009). To state a sufficient claim on the second element, "[t]he conspiracy must be motivated by racial or related class-based discriminatory animus." *Graham v. Henderson,* 89 F.3d 75, 82 (2d Cir.1996); *see Vega,* 610 F.Supp.2d at 204; *Martin v. New York State Dep't of Corr. Servs.,* 115 F.Supp.2d 307, 316 (N.D.N.Y.2000) (explaining that the Supreme Court defined the language of requiring intent to deprive of the equal protection of the laws to mean " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971))). "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Vega,* 610 F.Supp.2d at 204 (quoting *Martin,* 115 F.Supp.2d at 316 (internal quotations omitted)). " '[T]he statute should extend beyond its racial boundaries only when a class has been afforded suspect or quasi-suspect characterization or when Congress has provided the class special protection.' " *Vega,* 610 F.Supp.2d at 204 (quoting *Martin,* 115 F.Supp.2d at 316).

In the present case, Plaintiff asserts that the conspiracy against him was motivated by his status as a jailhouse lawyer, which he claims is a class that has been subject to discriminatory class-based animus. *See* Dkt. No. 26 at ¶¶ 97–98. The courts have previously determined that the class of jailhouse lawyers is not a protected class under 42 U.S.C. § 1985(3). *See Dolan,* 2014 WL 1876524, at \*13 (citing *Webster v. Fischer,* 694 F.Supp.2d 163, 196 (N.D.N.Y.2010), *aff'd,* 398 Fed. Appx. 683 (2d Cir.2010)). Plaintiff has failed to make out a prima facie conspiracy case under 42 U.S.C. § 1985(3) because jailhouse lawyers are not a protected class.

Alternatively, the Court finds that Plaintiff's § 1985(3) conspiracy claim is barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine, which applies to conspiracy claims pursuant to 42 U.S.C. § 1985, *see Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978),

"posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Jefferson v. Rose,* 869 F.Supp.2d 312, 317–18 (E.D.N.Y.2012) (quotations and citations omitted); *see also Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2,* 798 F.Supp.2d 443, 461 (E.D.N.Y.2011) (citation omitted). The intra-corporate conspiracy doctrine "extends to public corporate bodies, including municipalities." *Nimkoff v. Dollhausen,* 751 F.Supp.2d 455, 466 (E.D.N.Y.2011) (citation omitted); *see also Vega,* 610 F.Supp.2d at 206 (holding that the intra-corporate conspiracy doctrine applies to DOCCS employees). Here, the Defendant Correction Officers were all employees of DOCCS during the relevant time periods, and, accordingly, the Court dismisses this claim. *See* Dkt. Nos. 52–5 at 11; 52–6 at 14; 52–9 at 8; 52–17 at 7; 52–23 at 14; 52–21 at 16–17; 52–25 at 6–7.

### 4. 11th Amendment

**\*12** In Plaintiff's fourth cause of action, he seeks declaratory relief from Defendant DOCCS only. *See* Dkt. No. 26 at ¶ 102. Specifically, Plaintiff seeks to have those disciplinary actions taken against him, set forth in his complaint, reversed and expunged from his records. *See id.* The Eleventh Amendment, as interpreted by the Supreme Court, provides that states and their agencies may not be sued by private individuals in federal court for damages or injunctive relief without their consent. *See Bd. of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Kozaczek v. New York Higher Educ. Servs. Corp.,* No. 1:10–cv–107, 2011 WL 3687379, \*2 (D.Vt. Aug.23, 2011) (stating that a claim against a state agency is barred by the Eleventh Amendment because the state is the real party in interest). Defendant DOCCS is a New York State agency that has immunity under the Eleventh Amendment. *See Rother v. Dep't of Corr. and Cmty. Supervision,* 970 F.Supp.2d 78, 89–90 (N.D.N.Y.2013).

Plaintiff maintains that Defendant DOCCS has waived its sovereign immunity by engaging in affirmative conduct during litigation, including producing witnesses, engaging in substantial discovery, and answering interrogatories. *See* Dkt. No. 52 at 19–20. Certainly, states may waive their privilege to Eleventh Amendment immunity by voluntarily appearing in this Court or making a "clear declaration" that

Case 9:19-cv-00478-LEK-TWD     Document 22     Filed 01/30/20     Page 76 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

it submits to this Court's jurisdiction. *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Close v. State,* 125 F.3d 31, 36 (2d Cir.1997); *Rother,* 970 F.Supp.2d at 90. There was no such affirmative action taken by Defendant DOCCS in this case. To the contrary, Defendant DOCCS asserted their Eleventh Amendment immunity as an affirmative defense within their answers. *See* Dkt. Nos. 25, 32.

To establish waiver by litigation, as alleged by Plaintiff, Defendant DOCCS had to engage in litigation conduct that would require the Court to find a waiver " 'to avoid inconsistency, anomaly, and unfairness.' " *In re Charter Oaks Assocs.,* 361 F.3d 760, 767 (2d Cir.2004) (quoting *Lapides v. Bd. of Regents of the Univ. Sys.,* 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Defendant DOCCS appearance in this action and engagement in litigation does not impliedly waive its Eleventh Amendment immunity. *See Conrad v. Perales,* 92 F.Supp.2d 175, 183– 85 (W.D.N.Y.2000). The declaratory relief sought by Plaintiff from Defendant DOCCS is barred, and the Court dismisses this claim for lack of subject matter jurisdiction.

### 5. State common-law and state constitutional claims

Plaintiff asserts a claim for assault and battery under New York common law against Defendants Smith, King, and Morris, as well as claims for violations of the New York State Constitution against Defendants Stevens, Smith, Schunk, McIntyre, Hobart, King, McDermott, and Morris. *See* Dkt. No. 26 at ¶¶ 103–08. Defendants argue that all of Plaintiff's state law claims against Defendant Correction Officers in their individual or personal capacities are barred pursuant to New York Correction Law § 24. *See* Dkt. No. 48 at 10–11.

**\*13** In pertinent part, the New York statute provides that:

1. No civil action shall be brought in any court of the state ... against any officer or employee of the department ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and

maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24. It is well settled that when this Court exercises pendent jurisdiction over a state cause of action, it must apply the substantive state law. *See Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir.1996) (citations omitted) (explaining that the plaintiff's state law claims must be dismissed because "a federal court acts essentially as a state court in addressing pendent state law claims"); *Parris v. New York State Dep't of Corr. Servs.,* 947 F.Supp.2d 354, 365 (S.D.N.Y.2013); *Joy v. State,* No. 5:09–CV–841, 2010 WL 3909694, \*4 (N.D.N.Y. Sept. 30, 2010). Section 24 of New York Correction Law governs substantive rights; it is not procedural. *See Baker,* 77 F.3d at 15; *Joy,* 2010 WL 3909694, at \*4 (stating New York Correction Law § 24 is still viable as to state causes of action in federal court despite being found to be in violation of the Supremacy Clause as it relates to Section 1983 claims).

In opposition to Defendants' motion, Plaintiff argues that this statute does not offer immunity protection in this case because Defendants' acts were not performed within the scope of their employment. *See* Dkt. No. 52 at 24–25. The Court does not agree. An employee's actions are deemed to be within the scope of their employment when "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997) (citations omitted) (quoting *Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979)) (explaining that even where employees "exhibit human failings and perform negligently or otherwise than in an authorized manner," their actions do not necessarily excuse an employer under the doctrine of respondeat superior).

For purposes of New York Correction Law § 24, the courts have looked to the following factors to determine whether actions fall within the actor's scope of employment:

the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 77 of 87

Ames v. New York Dept. of Corrections and Community..., Not Reported in...

whether the specific act was one that the employer could reasonably have anticipated.

**\*14** *Ierardi,* 119 F.3d at 187 (quoting *Riviello,* 47 N.Y.2d at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278).

In the present case, Defendant Correction Officers were employed by DOCCS, and Plaintiff does not claim that any encounters at issue took place while any Defendants were not on duty as correction officers. *See* Dkt. No. 26. The actions of writing misbehavior reports and controlling the movements of prisoners fall squarely within Defendants' responsibilities of "maintaining order and security in correctional facilities and protecting the safety of inmates and employees." *Arteaga v. State,* 72 N.Y.2d 212, 217, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (1988); *see also Crump v. Ekpe,* No. 9:07–CV–1331, 2010 WL 502762, \*18 (N.D.N.Y. Feb.8, 2010). The alleged inappropriate filing of misconduct reports and excessive use of force during the movement of Plaintiff within the facility were not departures great enough to remove Defendant Correction Officers' actions from within the scope of their employment. *See Cepeda v. Coughlin,* 128 A.D.2d 995, 996, 513 N.Y.S.2d 528 (3d Dep't 1987); *Deal v. Yurack,* No. 9:04–CV–0072, 2007 WL 2789615, \*10 (N.D.N.Y. Sept.24, 2007); *Crump,* 2010 WL 502762, at \*18. Likewise, these actions, as alleged, are generally foreseeable in the execution of Defendant Correction Officers' duties. *See Riviello,* 47 N.Y.2d at 304, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (stating that where the tortious conduct is a natural incident of employment, it can be generally foreseeable); *Cepeda,* 128 A.D.2d at 996, 513 N.Y.S.2d 528. "While they may allege constitutional deprivations and actions exceeding the scope of a correction[ ] officer's authority, these types of claims have consistently been treated as giving rise to immunity from suit for pendent state law claims against correction[ ] officers in their individual capacities." *Crump,* 2010 WL 502762, at \*18. The Court finds that Plaintiff's pendent state claims are barred by New York Correction Law § 24. Accordingly, the Court dismisses these claims for lack of subject matter jurisdiction.

## IV. CONCLUSION

Footnotes

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 48) is **GRANTED** with regard to (1) Plaintiff's Eighth Amendment claim of malicious use of force against Defendants King and Morris, (2) Plaintiff's claim for conspiracy to deprive Plaintiff of the equal protection of the laws under 42 U.S.C. § 1985(3), (3) Plaintiff's claim for declaratory relief against Defendant DOCCS, (4) Plaintiff's claim for assault and battery under New York common law, (5) Plaintiff's claim for violations of the New York Constitution, and (6) Plaintiff's First Amendment Retaliation claim against Defendants Smith, McIntyre, Hobart, King, and Morris; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 48) is **DENIED** with regard to (1) Plaintiff's Eighth Amendment claim of malicious use of force against Defendant Smith and (2) Plaintiff's First Amendment retaliation claim against Defendants Stevens, Schunk, and McDermott; [2] and the Court further

**\*15 ORDERS** that the following claims are **DISMISSED with prejudice** from this action: (1) Plaintiff's Eighth Amendment claim of malicious use of force against Defendants King and Morris, (2) Plaintiff's claim for conspiracy to deprive Plaintiff of the equal protection of the laws under 42 U.S.C. § 1985(3), (3) Plaintiff's claim for declaratory relief against Defendant DOCCS, (4) Plaintiff's claim for assault and battery under New York common law, (5) Plaintiff's claim for violations of the New York Constitution, and (6) Plaintiff's First Amendment Retaliation claim against Defendants Smith, McIntyre, Hobart, King, and Morris; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4126326

1 To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

2 Plaintiff's case continues against Defendants Stevens, Schunk, McDermott, and Smith.

---

**End of Document**         © 2020 Thomson Reuters. No claim to original U.S. Government Works.

353 Fed.Appx. 620
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Muhammad KHALIL, Plaintiff–Appellant,

v.

Mr. Paul M. LAIRD, Warden, Mr. Justin Andrews,
Associate Warden, Mr. R. Schoenfelder, Captain,
Mr. J. McDevitt, Chaplain, Mr. Hoenig, Rabbi, Mr.
Gagliardi, Miss J. Anderson, Counselor Unit H52,
Ex–Unit Manager, Mr. V. Alcoser, W. Laundry Ex–
Supervisor, Mr. S. Benett, Defendants–Appellees.

No. 08–3644–pr.
|
Nov. 19, 2009.

**Synopsis**

**Background:** Federal prisoner brought action seeking declaratory and injunctive relief for alleged violations of his constitutional rights and those of other Muslim inmates. The United States District Court for the Eastern District of New York, John Gleeson, J., dismissed, and prisoner appealed.

**Holding:** The Court of Appeals held that prisoner's claims were rendered moot when he was released from prison.

Affirmed.

West Headnotes (1)

**[1]**    **Declaratory Judgment**
             **Criminal laws**

Prisoner's pro se claims for declaratory and injunctive relief for alleged violations of his constitutional rights and those of other Muslim inmates were rendered moot when he was released from prison.

14 Cases that cite this headnote

**\*620** Appeal from a July 17, 2008 judgment of the United States District Court for the Eastern District of New York (John Gleeson, Judge).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

**Attorneys and Law Firms**

Muhammad Khalil, pro se, Brooklyn, NY.

Benton J. Campbell, United States Attorney, and Margaret Kolbe and Tiana A. Demas, Assistant United States Attorneys, Eastern District of New York, Brooklyn, NY, for Appellees.

PRESENT: AMALYA L. KEARSE, JOSÉ A. CABRANES and CHESTER J. STRAUB, Circuit Judges.

**SUMMARY ORDER**

**\*\*1** Plaintiff-appellant Muhammad Khalil, *pro se,* appeals from a judgment of the United States District Court for the Eastern District of New York entered after the District Court dismissed this action for lack of subject matter jurisdiction. Khalil brought this action seeking declaratory and injunctive relief for alleged violations of his constitutional rights and those of other Muslim inmates at the federal Metropolitan Detention Center ("MDC") in Brooklyn, New York. We assume the parties' familiarity with the underlying facts, the procedural history of this action, and the issues raised on appeal.

**\*621** Khalil was released from prison while this action was pending in the District Court. The District Court determined that, because Khalil was no longer housed in the MDC, Khalil's claims were moot and the Court lacked subject matter jurisdiction. We agree. When Khalil was released from prison, he no longer had a "continuing personal stake" in the outcome of this action, and his claims were rendered moot. *Muhammad v. City of N.Y. Dep't of Corr.,* 126 F.3d 119, 123 (2d Cir.1997). Although a prisoner who has been released from a prison facility might, under some circumstances, be able to assert claims in a representative capacity on behalf of other inmates still housed in the facility, *see id.* at 124, Khalil may not do so here because Khalil is proceeding *pro se* and a "*pro se* litigant ... is not empowered to proceed on behalf of anyone other than himself." *McCall v. Pataki,* 232 F.3d 321, 322 (2d Cir.2000) (citing 28 U.S.C. § 1654); *see also Berrios*

*v. N.Y. City Hous. Auth.,* 564 F.3d 130, 133 (2d Cir.2009). Accordingly, Khalil's claims are moot and the District Court correctly dismissed this action for lack of subject matter jurisdiction.

We have considered all of Khalil's remaining arguments on appeal and find them to be without merit.

**CONCLUSION**

For the reasons set forth above, the July 17, 2008 judgment of the District Court is **AFFIRMED.**

**All Citations**

353 Fed.Appx. 620, 2009 WL 3863355

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 81 of 87

Matthews v. Thomas, Not Reported in Fed. Supp. (2017)

2017 WL 6629229
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl MATTHEWS, Plaintiff,

v.

Justin THOMAS, Superintendent,
Marcy Correctional Facility, Defendant.

9:16-CV-1198 (TJM/CFH)
|
Signed 11/06/2017

**Attorneys and Law Firms**

Darryl Matthews, 16-A-0623, Marcy Correctional Facility, P.O. Box 3600, Marcy, New York 13403, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, OF COUNSEL: MARIA E. LISI-MURRAY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224, Attorney for Defendant.

**REPORT-RECOMMENDATION AND ORDER** [1]

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1** Plaintiff pro se Darryl Matthews ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Superintendent ("Supt.") Justin Thomas—who, at all relevant times, was employed at Marcy Correctional Facility ("Marcy")—violated his constitutional rights under the Sixth and Fourteenth Amendments. Dkt. No. 1 ("Compl."). Presently pending before the Court is defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Dkt. No. 12. Plaintiff did not respond. For the following reasons, it is recommended that defendant's motion be granted.

**I. Background**

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II infra. Plaintiff alleges that on February 3, 2016, pursuant to a guilty plea to various criminal charges, a Suffolk County state court judge sentenced him to two years in prison, to be served as parole supervision, [2] upon the successful

completion of the drug treatment program at the Willard Drug Treatment Facility ("Willard"), followed by two years of post-release supervision. Compl. ¶ 7; Dkt. No. 1-1 at 4. Plaintiff "was eventually transferred to the care and custody of [DOCCS], held at Marcy Correctional Facility." Compl. ¶ 8. At the commencement of this action, plaintiff was incarcerated at Marcy and had not been transferred to Willard. Id. ¶ 8-9. Plaintiff has not updated the Court as to whether he was ever transferred to Willard prior to his release from custody. Plaintiff asked his Offender Rehabilitation Counselor when he would be transferred to Willard, but received no response. Id. ¶ 9. Plaintiff filed a grievance claiming that Marcy staff failed to transfer him to Willard in fulfillment of his plea agreement. Id. ¶ 10. The Inmate Grievance Resolution Committee ("IGRC") [3] denied the grievance. Id. ¶ 11. Plaintiff appealed his grievance to Supt. Thomas, who affirmed the decision of the IGRC. Id. Plaintiff's further appeal to the Central Office Review Committee ("CORC") was denied. Id.

**II. Legal Standard**

**A. Motion to Dismiss**

**\*2** Under Rule 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (internal quotation marks omitted) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is " ' plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement ... it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible....") (internal

citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.") (internal citations omitted).

## III. Discussion [4]

In a December 22, 2016 Decision and Order ("D&O"), the Court interpreted plaintiff's complaint to allege violations of his First Amendment right of access to the courts and Fourteenth Amendment right to substantive due process. See Dkt. No. 8. at 4. Defendant moves to dismiss plaintiff's complaint, arguing that plaintiff has failed to state a claim under either legal theory. Dkt. No. 12 at 4.

## A. Fourteenth Amendment

Liberally read, plaintiff alleges that defendant's failure to obey a Suffolk County Court Order to transfer him to Willard in fulfillment of his plea agreement constitutes a violation of his due process rights. See Compl. [5] Defendant argues that plaintiff has failed to allege a claim under § 1983 because plaintiff has no constitutional right to placement at Willard. Dkt. No. 12 at 3.

**\*3** The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. Due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

## 1. Protected Liberty Interest

First, the Court must establish whether defendant's failure to transfer plaintiff to Willard violated his due process rights. As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson, 545 U.S. at 221 (internal citations omitted). Affording plaintiff special solicitude, he appears to suggest that he retains a liberty interest in placement at Willard based on (1) his due process rights, and (2) a Suffolk County Court Order mandating placement at Willard. See Toles v. Oklahoma Dep't of Corr., Case No. CIV-17-150-D, 2017 WL 1957286, at *7 (W.D. Okla. Mar. 28, 2017) (assessing the plaintiff's complaint based on his constitutional due process rights as well as "what he contends had been 'Court-Ordered' in the Judgment and Sentence."); Compl. ¶¶ 1-11.

## a. Liberty Interest Inherent in the Due Process Clause

"The Due Process Clause does not protect against every change in the conditions of confinement having a substantial impact on inmates," particularly the changes that are "within the normal limits or range of custody which the conviction

has authorized the State to impose." Sandin v. Conner, 515 U.S. 472, 478 (1995) (citation omitted). In this Circuit, it is well-settled that "an inmate has no constitutionally protected [liberty] interest in parole[,] ... other conditional release from prison, prior to the expiration of a valid sentence[,] ... discretionary good time release[,] .... or to participation in prison programs which might expedite release." McMillan v. Perez, No. 14-CV-3854 (KMK), 2016 WL 4926202, at *5 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks omitted) (citing Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979); Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009); Johnson v. Baker, 108 F.3d 10, 11 (2d Cir. 1997)).

Defendant cites three cases in support of his argument that plaintiff does not have a liberty interest in placement at Willard: Buitrago v. City of New York, Cofield v. Lempke, and Andujar v. Fischer. See Dkt. No. 12 at 3-5. In those cases, the plaintiffs were incarcerated at other facilities for specified periods of time before they were transferred to Willard. See Buitrago v. City of New York, No. 11 Civ. 8551(RJS)(DCF), 2012 WL 6621688, at *2 (S.D.N.Y. Dec. 19, 2012) (noting that the plaintiff was incarcerated for 90 days pending his transfer to Willard); Cofield v. Lempke, No. 10-CV-0284 (MAT), 2011 WL 2881951, at *1 (W.D.N.Y. July 15, 2011) (noting that the plaintiff was incarcerated for 72 days pending his transfer to Willard); Andujar v. Fischer, No. 09-CV-489 (NAM/DRH), 2010 WL 786298, at *1 (N.D.N.Y. Mar. 2, 2010) (noting that the plaintiff was incarcerated for 25 days pending his transfer to Willard).

**\*4** Here, plaintiff contends that defendant never transferred him to Willard, despite the Suffolk County Court Order. See Compl. ¶¶ 7-9. Although plaintiff's complaint focuses on defendant's apparent complete *failure* to transfer plaintiff to Willard rather than a *delay* in transfer, the rationale contained within the above-mentioned cases applies. These cases set forth the proposition that "the failure of prison authorities to timely transfer an inmate to a drug treatment program does not state a redressable constitutional claim." Cofield, 2011 WL 2881951, at *5; see Buitrago, 2012 WL 6621688, at *8; see also Andujar, 2010 WL 786298, at *4. Similar to Buitrago, Cofield, and Andujar, plaintiff pleaded guilty to various drug charges and was sentenced to two years in prison, to be served as parole supervision, followed by two years of post-release supervision. Compl. ¶ 7; Dkt. No. 1-1 at 4. As in Andujar, plaintiff's "release to parole supervision was contingent upon successful completion of his subsequent treatment" at Willard. Andujar, 2010 WL 786298, at *3;

Dkt. No. 1-1 at 4. Although the Suffolk County Court judge provided plaintiff the opportunity to serve his sentence as parole supervision, that "does not mean ... that [p]laintiff had a protectable constitutional interest in being transferred to Willard on a timely basis" as there is "no constitutional right to participate in programs that might shorten [inmates'] sentence or otherwise expedite their release." Buitrago, 2012 WL 6621688, at *7, 8 (citing Moody v. Dagget, 429 U.S. 78, 88 n.9 (1976)).

The undersigned also finds helpful the Western District of Oklahoma's decision in Toles v. Oklahoma Department of Corrections. Toles, 2017 WL 1957286, at *7. In Toles, the plaintiff alleged that the defendants "impermissibly delayed and/or denied him entry into a drug treatment program" in violation of his due process rights. Id. at *6. Relying on Tenth Circuit precedent, the Western District of Oklahoma determined that "any liberty interest inherent in the Constitution could only arise once the inmate had been released" from the drug treatment program. Id. at *7. Because the plaintiff had been placed in the program and subsequently removed upon his transfer to a different facility, the Court concluded that "a constitutionally-protected liberty interest in completing the program arose upon [the plaintiff's] placement in the drug treatment program." Id.; cf. Boutwell v. Keating, 399 F.3d 1203 (10th Cir. 2005) (holding that because the plaintiff had not yet been released from confinement, he "failed to allege facts necessary to create an inherent constitutional liberty interest" in placement in the pre-parole conditional supervision program). Because of that actual placement in the drug treatment program, the plaintiff had alleged a valid constitutionally-protected liberty interest in the program. Id. at *8.

Unlike the plaintiff in Toles, plaintiff here alleges that he was never placed in Willard. See Compl. ¶ 8-9. Because it appears that plaintiff was never at Willard, a constitutionally-protected liberty interest in such placement, and in completion of the program, never arose. See Toles, 2017 WL 1957286, at *7-8; Compl. ¶ 10. Further, although plaintiff's Willard placement was court ordered, there is no constitutional right to placement in a program which may expedite his release from prison. See McMillan, 2016 WL 4926202, at *5. Accordingly, plaintiff has failed to demonstrate that he has an inherent constitutionally-protected liberty interest in placement at Willard.

**b. Liberty Interest Created by State Law**

Case 9:19-cv-00478-LEK-TWD  Document 22  Filed 01/30/20  Page 84 of 87

Matthews v. Thomas, Not Reported in Fed. Supp. (2017)

Plaintiff argues that a protected liberty interest arises from the Suffolk County Court Order mandating his transfer to Willard. See Compl. [6] "A state may confer enforceable liberty interests on prisoners through its enactment of statutory or regulatory measures which place substantive limitations on prison officials' discretion." Klos v. Haskell, 48 F.3d 81, 86-87 (2d Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-73 (finding that a state statute created the plaintiff's liberty interest in avoiding administrative confinement); Greenholtz, 442 U.S. at 12 (finding that a state statute a liberty interest was created in early parole); Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974) (finding that a state statute created a liberty interest in the plaintiff's retention of good-time credits); Gittens v. LeFevre, 891 F.2d 38 (2d Cir. 1989) (finding that a liberty interest was created in avoiding "keeplock" confinement)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified 'substantive predicates' which limit the discretion of state officials; and (2) it must have employed 'explicitly mandatory language,' requiring state officials to follow those substantive predicates." Klos, 48 F.3d at 87 (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462-63 (1989)).

**\*5** Pursuant to New York Criminal Procedure Law § 410.9(1), "if the court directs that the sentence be executed as a sentence of parole supervision, it shall remand the defendant for immediate delivery to a reception center operated by the state department of corrections and community supervision ... for a period not to exceed ten days." N.Y. CRIM. PRO. L. § 410.91(1). A § 1983 action, however, does not arise automatically from a defendant's violation of state law. Doe v. Conn. Dep't of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990); see Watson v. City of N.Y., 92 F.3d 31, 37-38 (2d Cir. 1996) ("Ample precedent establishes that a state rule of criminal procedure ... does not create a liberty interest that is entitled to protection under the federal Constitution."); Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983...."). "[D]espite the 'explicitly mandatory language' utilized in the state statute requiring [the plaintiff] to be transferred from a receiving facility to Willard within ten days[,] ... the undersigned [must] determine what 'the true liberty interest at stake ...' is and whether it was accorded proper protections." Andujar, 2010 WL 786203, at *2 (citing Watson, 92 F.3d at 37-38).

The Suffolk County Court Order instructed that plaintiff complete his sentence through parole supervision at Willard. Dkt. No. 1-1 at 4. Plaintiff's incarceration for an indeterminate period at Marcy did not alter the imposition of plaintiff's two-year prison sentence, nor did it "create[ ] a protected liberty interest in early release, notwithstanding the mandatory language of § 410.91." McMillian, 2016 WL 4926202, at *6. Undoubtedly, plaintiff has the right to be free from unnecessary incarceration. Andujar, 2010 WL 786203, at *3. However, plaintiff's incarceration at Marcy was consistent with, and in furtherance of, a valid two-year prison sentence. See Compl. ¶ 7; Dkt. No. 1-1 at 3-5. Although the Suffolk County Order mandated transfer to Willard, plaintiff's incarceration at Marcy was still pursuant to his two-year sentence. See Dkt. No. 1-1 at 3-5; see McMillian, 2016 WL 4926202, at *6 (concluding that the 60-day period the plaintiff spent incarcerated did not amount to a constitutional violation prior to transfer to a drug treatment program); Andujar, 2010 WL 786203, at *3, 4 (finding that the defendants "were detaining [the plaintiff] pursuant to a valid sentencing order until he could be transferred to complete the conditional requirement standing between his incarceration and release."). Accordingly, plaintiff has failed to demonstrate a protected liberty interest created under the Suffolk County Court Order.

**2. Substantive Due Process**

In its December 22, 2016 D&O, the Court interpreted plaintiff's complaint as alleging that defendant violated his substantive due process rights based on defendant's refusal to obey the Suffolk County Court Order. Dkt. No. 8 at 6-8. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense ... but not against government action that is 'incorrect or ill-advised.' " Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted). In this Circuit, "[a] prison official's knowing refusal to obey a state court order affecting a prisoner's rights would make that official liable for infringing upon the inmate's personal liberty protected by the substantive due process clause of the Fourteenth Amendment." Johnson v. Coughlin, No. 90 Civ. 1731(SHS), 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997) (internal quotation marks and citation omitted). Such cases, however, "overwhelmingly involve [court] orders directing the prisoner's release from custody or release from a segregation unit." Hodge v. Perilli, No. 06 Civ. 2480(PAC)(MHD), 2010 WL 3932368, at *11 (S.D.N.Y. Sept. 30, 2010) (citing Cabassa v. Gummerson, No. 9:01-CV-1039, 2008 WL 4416411, at *16-17 (N.D.N.Y.

Sept. 24, 2008) (involving release from special housing unit); Johnson, 1997 WL 431065, at *6 (same); Arce v. Miles, No. 85 Civ. 5810, 1991 WL 123952, at *9-10 (S.D.N.Y. June 28, 1991) (involving release from segregation unit); Huddleston v. Shirley, 787 F. Supp. 109, 110-11 (N.D. Miss. 1992) (involving release from "jail during the day to go to work"); Talisker v. Moore, 738 F. Supp. 1005, 1013-14 (S.D. W. Va. 1990) (release from custody)).

 **\*6** Insofar as plaintiff argues that defendant violated his substantive due process rights by failing to comply with the Suffolk County Court Order, the undersigned disagrees. Plaintiff does not allege that defendant's actions "were arbitrary, conscience-shocking or oppressive in the constitutional sense." Shuler v. Brown, No. 07-CV-0937, 2009 WL 790973, at *10 (N.D.N.Y. Mar. 23, 2009). The aforementioned case law centers on a defendant's refusal to obey a state court Order to release the plaintiff from segregated confinement, where prolonged isolation exposes an inmate to the possibility of physical and/or psychological harm, which, depending on the frequency and duration of confinement, may lead to lasting consequences unique to such confinement. See Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000).

Here, however, plaintiff alleges that the defendant refused to comply with the Suffolk County Court Order that he serve his sentence at a drug treatment program. See Compl. at 3. The undersigned finds that there is a distinct difference between a defendant's refusal to obey a court order by failing to release an inmate from segregated confinement or custody which has been ordered by a court and refusal to transfer a plaintiff to a drug treatment facility as ordered by a court while serving a valid prison sentence. "The former unequivocally infringes on a protected liberty interest—the right to be free from lawless incarceration—but the latter gives rise to no such concerns, given the absence of a liberty interest ab initio, as discussed above." Higgenbottom v. Racine County Sheriff Dept., No. 13-CV-1333-JPS, 2015 WL 5512952, at *7 (E.D. Wi. Sept. 17, 2015); see subsection III.A.1.b.-c. supra. As plaintiff was validly in custody, no substantial due process violation occurred by defendant's failure to transfer plaintiff to Willard.

Therefore, because plaintiff has failed to allege a protected liberty interest in placement at Willard either inherent in the Due Process Clause or created by the state, he has failed to demonstrate a violation of his substantive due process rights.

Accordingly, it is recommended that the defendant's Motion to Dismiss on this ground be granted.

**B. Access to Courts**
In its December 22, 2016 D&O, the Court also interpreted the complaint as alleging a violation of plaintiff's First Amendment right of access to the courts. Dkt. No. 8 at 7-8. [7] In Johnson v. Coughlin, the Southern District of New York stated that:

> [a plaintiff's] right of access to the courts is also implicated by a state official's knowing refusal to obey a state court order affecting a prisoner's rights. Logic compels the conclusion that if a prisoner's initial access to a forum is allowed, but final access to the remedy decreed denied, the prisoner's broader right to petition the government for redress of grievances is vitiated.

Johnson, 1997 WL 431065, at *7 (internal quotation marks omitted) (quoting Arce, 1991 WL 123952, at *9); see Cabassa, 2008 WL 4416411, at *16 ("It is all but self-evident that a prison official's knowing refusal to obey a state court order directing an inmate's release from S.H.U. (following that inmate's filing a suit requesting that order) would make that official liable for infringing upon the inmate's right of 'access to the courts' under the First Amendment.").

Defendant argues that "[u]nlike Johnson (and similar cases), this case does not involve a situation in which a State official could plausibly be found to have knowingly refused a State court order affecting an inmate's rights." Dkt. No. 12 at 7. The undersigned agrees. First, plaintiff does not have a protected liberty interest in placement at Willard. See subsection III.A.2 supra. Second, in Johnson and Cabassa, the plaintiffs, who were confined in SHU, petitioned the state courts for their release and initiated § 1983 actions upon the defendants' failures to obey those orders, resulting in Court orders directing the plaintiffs' release from SHU. See Cabassa, 2008 WL 4416411, at *16; Johnson, 1997 WL 431065, at *7. Here, there is no intervening state court order mandating plaintiff's release from confinement; rather, the state court order sentences plaintiff to two years in prison,

and plaintiff's confinement at Marcy was pursuant to that sentence. See Compl. ¶ 7. Although the Order also directs placement at Willard, defendant's failure to transfer him does not amount to a knowing violation of his constitutional rights because keeping plaintiff at Marcy was still consistent with the Suffolk County Court Order. See subsection III.A.2 supra; Cabassa, 2008 WL 4416411, at *16. Therefore, because plaintiff's constitutional rights were not implicated by defendant's failure to transfer him to Willard, plaintiff has failed to demonstrate that defendant violated his First Amendment right of access to the courts. Accordingly, it is recommended that defendant's Motion to Dismiss on this ground be granted. [8]

**\*7** Moreover, even, assuming *arguendo*, plaintiff had a protected liberty interest in placement in Willard, plaintiff requested only that the Court grant him injunctive relief "in the form of an order requiring Plaintiff be immediately transferred to the Willard Drug Treatment program." Compl. at 3. Plaintiff was released from prison on April 3, 2017 while his action was pending. See subsection III.A.n.5 supra. Because plaintiff's complaint requested only injunctive relief in the form of a transfer, when plaintiff was released from prison "he no longer had a continuing personal stake in the outcome of the action, and his claims were rendered moot." Khalil, 353 Fed.Appx. at 621 (2d Cir. 2009) (internal quotation marks omitted) (quoting Muhammad v. City of N.Y., 126 F.3d 119, 123 (2d Cir. 1997)); see Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) ("Where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."); Douglas v. Hollins, 160 Fed.Appx. 55, 56 (2d Cir. 2005) (summary order) ("Because [the plaintiff] has been released from prison, his request for injunctive relief is moot."); Smith v. Fischer, 13-CV-6127-FPG, 2016 WL 3004670, at *2 (W.D.N.Y. May 23, 2016) ("It is settled in the Second Circuit that an inmate's release from prison moots his claims for declaratory and injunctive relief against the prison's officials."); Henrius v. County of Nassau, 13-CV-1192 (SJF) (SIL), 2016 WL 1171598, at *3 (E.D.N.Y. Mar. 24, 2016)

(internal quotation marks omitted) (concluding that because the plaintiff was released from prison, any injunctive relief "would afford no legally cognizable benefits to him since he was no longer imprisoned within the DOC [sic] system."). Therefore, even if plaintiff could establish a protected liberty interest in placement at Willard, his release from incarceration renders his complaint, which solely requests injunctive relief in the form of transfer to Willard, moot.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 12) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff Darryl Matthew's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [9]

**IT IS SO ORDERED**.

### All Citations

Not Reported in Fed. Supp., 2017 WL 6629229

Footnotes

1   This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2   "A sentence of parole supervision is an indeterminate sentence of imprisonment, or a determinate sentence of imprisonment ..., which may be imposed upon an eligible defendant.... An individual who receives such a sentence shall be placed under the immediate supervision of the state division of parole and must comply with the conditions of parole, which shall include an initial placement in a drug treatment campus for a period of ninety days at which time the defendant shall be released therefrom." N.Y. CRIM. PRO. L. § 410.91(1).

Case 9:19-cv-00478-LEK-TWD    Document 22    Filed 01/30/20    Page 87 of 87

Matthews v. Thomas, Not Reported in Fed. Supp. (2017)

3    The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

4    All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

5    Plaintiff requests injunctive relief—an immediate transfer to Willard. Compl. at 3. The DOCCS look up website provides that plaintiff was conditionally released to parole on April 3, 2017. See DOCCS LOOKUP, http://nysdoccslookup.doccs.ny.gov/ (last visited Nov. 6, 2017). It is unclear if plaintiff was transferred to Willard prior to his release. Further, plaintiff has not provided the Court with an updated address, as is required. N.D.N.Y. L.R. 10.1(c)(2).

6    Defendant does not address this argument.

7    "To state a claim for denial of access to the courts ..., a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Wesolowski v. Washburn, 615 F. Supp. 2d 126, 129 (W.D.N.Y. 2009) (internal quotation marks and citation omitted).

8    To the extent that plaintiff asserts a supervisory liability claim against Supt. Thomas, pursuant to his role as Superintendent of Marcy, such claim cannot succeed. Absent an underlying constitutional violation by a subordinate, there can be no supervisory liability. Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability."). The undersigned recommends that plaintiff's First and Fourteenth Amendment claims be dismissed, and, thereby, there exists no underlying constitutional violation for which defendant could be found liable.

9    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

---

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.